PRAIRIE SCHOOL TOWNSHIP *vs.* WM. HASELEU, *et al.*

Opinion filed July 6th, 1893.

### School Township Treasurer—Cannot Sell Bonds.

Chapters 44, 45, Sess. Laws Dak. T. 1883, relating to school townships and school house bonds, considered. *Held*, that the school board (consisting of the treasurer, clerk, and director) is the official governing board of such school township, and such board has full power and authority to issue, negotiate, and sell such bonds of the school township as have been duly voted by the electors for the purpose of building a school house. *Held*, further, that the school township treasurer, acting independently, has no authority under the law and by virtue of his office as treasurer, to issue, negotiate, or sell such bonds.

### School Board Responsible for Lost Funds.

Where the school board of the plaintiff, consisting of the treasurer, clerk, and director, issued certain school house bonds, which had been regularly voted by the electors, and in doing so delivered such bonds to a bank to be negotiated and sold for the benefit of the school township, and the bonds were sold and put in circulation, but the proceeds were never turned over to the school township, but, on the contrary, were lost to the school township, *held*, that the school board was wholly responsible for such loss. *Held*, further, that such bonds not having been delivered to the treasurer for negotiation and sale, and he never having sold or attempted to sell the same, an action will not lie against the treasurer or his sureties on his official bond for a breach of the condition of such bond which requires the treasurer to account for and pay over all moneys and property which shall come into his hands as treasurer.

### Obligation of Surety Not Enlarged by Construction.

The obligations of sureties upon official bonds are measured by the language of the bond, and where the condition of a bond embodies the provisions of the statute, and no more, the obligation cannot be expanded by construction beyond the fair import of the language in which the sureties have consented to be bound.

### Parol Evidence to Vary Terms of Receipt.

When the bonds were delivered by the board at the bank for negotiation and sale, all members of the board were at the bank, and acting in concert. At that time the cashier of the bank delivered to the treasurer a writing as follows: "$1,000, Grand Rapids, Dakota, Sept. 28th, 1883. Received of William Haseleu, Treas. Prairie School Township, one thousand dollars in bonds of Prairie Tp., LaMoure Co., D. T., for placing and cr. A. H. Huelster, Cashier Bank of Grand Rapids." *Held*, that such writing embodied both a receipt and a contract, and that, as such, its terms could be varied and explained by parol evidence, but only as to that part which is a mere receipt.

**Error Without Prejudice.**

> Where it appears that upon the uncontroverted facts the plaintiff cannot
> recover in the action, a verdict and judgment for defendants will not be dis-
> turbed by this court even when the record shows errors in procedure.    Such
> errors are without prejudice.

Appeal from District Court, La Moure County; *Rose,* J.

Action on a bond by the Prairie School Township against
William Haseleu, August Beckman, and Stephen Kohan. Defen-
dants had judgment, and plaintiff appeals.

Affirmed.

*George W. Newton,* for appellant.

*L. C. Harris* and *E. W. Camp,* for respondents.

WALLIN J.   This action is brought to recover damages for an
alleged breach of the condition of an official bond given by an
ex-treasurer of the plaintiff.   All of the defendants executed the
official bond; the defendant William Haseleu, the ex-treasurer,
signing as principal, and defendants Beckman and Kohan signing
as sureties.   The allegations contained in the first six paragraphs
of the complaint, and which are expressly admitted to be true by
the defendants' answer, are, in substance, as follows:   The plain-
tiff was at the time in question, and is, a duly organized school
township of La Moure County; that defendant Haseleu, after
being elected, qualified for the office of treasurer of said school
township in July, 1883, by taking the required official oath and
giving said official bond; that Haseleu entered upon the duties of
his office, and was treasurer of the plaintiff at the time the school
bonds hereafter referred to were voted, executed, and delivered;
that at a meeting of the school township held in September,
1883, it was decided by a majority of the electors that said school
township should, for the purpose of building a school house, issue
two bonds of $500 each, bearing 7 per cent. interest; that there-
after, and on the 28th day of September, 1883, the school board
of said school township, (which board was wholly composed of
the three defendants,) in pursuance of the vote caused to be exe-
cuted and did execute and did issue two separate school bonds of

said school township, each of said bonds being for the sum of
$500, and bearing 7 per cent. interest per annum.   Paragraphs 7,
8, 9, 10 and 11 of the complaint are as follows:   "(7) That both
of such school bonds, each being for the sum of five hundred
dollars, and of the value of five hundred dollars each, were placed
in the hands and custody of William Haseleu, the treasurer of
said school township, for the purpose of negotiation and sale, and
that said William Haseleu did negotiate and make sale of said
two school township bonds with C. T. Ingersoll for the whole sum
of nine hundred and fifty dollars cash.   (8) That on the 24th day
of June, 1884, the term of said office of said William Haseleu
expired as treasurer of said school township, and one Lewis M.
Olson immediately succeeded him, the said William Haseleu, as
treasurer of such school township, and received from his prede-
cessor, the said William Haseleu, the books and papers belonging
to his said office; but that the said William Haseleu neglected and
refused to turn over to him, the said Lewis M. Olson, and to
deliver up to him, the two school bonds heretofore described, or
to turn over and deliver up to him, the said Lewis M. Olson, the
moneys for which said described school bonds were sold, and
neglected and refused to account for said bonds or their proceeds,
or any part thereof, except the sum of fifty dollars.   (9) That
the said Lewis M. Olson, the school township treasurer who
immediately succeeded the said William Haseleu as treasurer,
repeatedly demanded of the said William Haseleu the above
described school township bonds, or their value, less the fifty
dollars accounted for by the said William Haseleu, but that the
said William Haseleu has all the time refused to turn over to him,
the said Louis M. Olson, the said school township bonds or their
value, and has refused in every way to account for their value or
for the said bond, except as herein stated, and still refuses and
neglects to account for them or for their value, or any part thereof,
except the fifty dollars herein mentioned.   (10) That the said
Lewis M. Olson was treasurer of said school township for the
five years next succeeding his first taking possession of such

office on the 27th day of June, 1884, and that he was succeeded in said office by Gustave Papenfuss, who is now the duly elected and qualified treasurer of said school township. (11) That by reason and means of the facts herein stated that said William Haseleu and his co-defendants are indebted to the plaintiff herein, the said Prairie school township, in the sum of nine hundred dollars, and interest thereon from the 27th day of June, 1884, at the rate of seven per cent. per annum, for which amount and costs of this action plaintiff asks judgment against said defendants."

For answer to the complaint defendants say: "(1.) That they admit all the allegations contained in paragraphs numbered 1, 2, 3, 4, 5, 6, and 10 of plaintiff's complaint. (2) That they deny that the school bonds described in paragraph 6 of plaintiff's complaint were ever placed in the hands of the defendant William Haseleu, treasurer as alleged; and further deny that the said bonds were sold by the said William Haseleu, treasurer, to one C. T. Ingersoll, for the sum of nine hundred and fifty dollars cash, as alleged; and further deny that said bonds were ever sold or negotiated at any time or place by the said William Haseleu, treasurer, for the sum alleged in paragraph 6, or for any other sum whatever. (3) That they specifically deny all the allegations contained in paragraph 8 of plaintiff's complaint except as to the date on which defendant's (William Haseleu's) term as treasurer expired, and the name of the person succeeding him as such school treasurer. (4) That they specifically deny each and all of the allegations contained in paragraph 9 of plaintiff's complaint. (5) That they deny that they are indebted to the plaintiff in the sum of nine hundred and fifty dollars and interest, as alleged in paragraph 11 of complaint, or that they are indebted to plaintiff in any sum whatever. (6) The defendants for further answer and defense to plaintiff's complaint, say that the cause of action therein stated did not accrue at any time within six years next before the commencement of plaintiff's action thereon. Wherefore defendants demand judgment for costs."

There was a jury trial, and the verdict and judgment were for the defendants.   The proceeding had at the trial, embracing the evidence and rulings thereon and the instructions given to the jury, were brought up on the record.   A motion for a new trial was denied.   Plaintiff assigns error in this court upon certain rulings of the trial court made upon the admission of evidence, and upon certain instructions of the court given to the jury; but, in the view which we have taken of the whole case as presented by the record, we deem it unnecessary to specifically pass upon plaintiff's assignments of error.   If the District Court did err in its rulings and instructions which are assigned as error the result would not be different, as we have concluded, upon the conceded facts and undisputed and competent evidence in the record, that the plaintiff cannot recover in this action, and hence that the judgment must be affirmed.   Paragraph 6 of the complaint, the averments in which are expressly admitted in the answer, alleges, in substance, that the defendants at the time in question constituted plaintiff's school board; and that the defendants, acting as board, executed and issued two $500 7 per cent. bonds, pursuant to a vote of the electors directing such bonds to issue for the purpose of building a school house.   The execution and issuing of the bonds by the school board being admitted, it becomes of importance to inquire when, where, and to whom such bonds were issued and delivered by the school board.   Upon this vital feature of the case issue is squarely joined.   The complaint (paragraph 7, *supra*) alleges in substance that "both of such school bonds were placed in the hands and custody of William Haseleu, the treasurer of said school township, for the purpose of negotiation and sale; and that said William Haseleu did negotiate and make sale of said two school township bonds with one C. T. Ingersoll for the whole sum of nine hundred and fifty dollars." It is admitted that Haseleu, upon demand therefor, has neglected and refused to turn over the bonds or their proceeds to his successor in office, and has wholly failed to account for either the bonds or their proceeds, except for the sum of fifty dollars which

was paid over to the treasurer when the bonds were issued, and has been properly accounted for; and also for a certain bill of lumber to the amount of $216, which has been received by the plaintiff on account of the two bonds, and which has been accounted for to the plaintiff. The failure to turn over the bonds of their proceeds, except as above stated, constitues the alleged breach of the condition of the official bond upon which the plaintiff bases its rights of action.

At the trial the plaintiff rested its case upon the admissions made in defendants' answer, and upon the testimony, oral and written, set out hereafter. Lewis M. Olson testified substantially as follows: "My name is Lewis M. Olson. Am a farmer. Was treasurer of Prairie school township at one time. Know the defendant William Haseleu. I became treasurer June 27th, 1884. I succeeded Mr. Haseleu, the defendant in this case. Mr. Haseleu did not turn over to me the bonds of Prairie school township of $500. He turned over a receipt. He never turned over any money as realized from such bonds. [Paper shown witness.] That is the receipt and paper. I received that paper from the defendant Mr. Haseleu." The paper was put in evidence, and is as follows: "$1,000. Grand Rapids, Dakota, Sept. 28th, 1883. Received of William Haseleu, Treas. Prairie School Township, one thousand dollars in bonds of Prairie Tp., La Moure Co., D. T., for placing and cr. A. H. Huelster, Cash. Bank of Grand Rapids." Olson further testified: "I was treasurer of the township for some years. As treasurer I have knowledge of the payment of interest on the bonds of $500 each issued September 28th, 1883. I paid coupons every year for two terms while I was treasurer. Am not a member of the school board. These bonds are now outstanding." George R. Fralick testified in substance that he was county auditor of La Moure County. He produced a record showing that the two $500 bonds were registered on September 28th, 1883, and were issued by plaintiff, and made payable to one C. T. Ingersoll. Another witness testified that

the bonds were worth $950 when Haseleu went out of office on September 24th, 1884. Plaintiff here rested its case.

The defendants introduced Haseleu as their only witness. He testified as follows: "Reside in Prairie township, La Moure County, N. D., since 1882. Am one of the defendants in this action. I was treasurer of Prairie school township in 1883. I knew of certain bonds of $500 each having been issued in the month of September, 1883, by Prairie school township. I knew Mr. Beckman procured the blanks for the issuance of these bonds. He was clerk of Prairie school township. The bonds which are in question in this action were filled out at Mr. Whitman's office, at Grand Rapids, in this county. I was in town that day. The way I happened to be there that day was Mr. Beckman came to me, and said he was going to Grand Rapids, and he had some business there; no other party. He told me he was going to prepare these bonds, and asked me to come along with him. Mr. Stephen Kohan went with us that day. He was director of Prairie school township. I did go in there when the bonds were filled out. I did not sign them. These identical bonds were taken in hand by a party I do not know. After these bonds were filled out, Mr. Beckman, Mr. Kohan, and I went with them to the Rapids Bank, and they were handed right over, after we went into the bank, to Mr. Huelster. He was cashier of the bank at that time. There was no conversation at that time,—not as to how much should be received for them. Mr. Ingersoll was not there. I did not, before these bonds were issued, ever make any negotiations with any parties whatever—Mr. Ingersoll or anybody else—for the sale of these bonds. I never saw Mr. Ingersoll. I never made any attempt to sell these bonds to any one. By the Court: Did you have these bonds in your hands? A. I did not. No sir. It was so long ago I couldn't tell. They were carried in by all three of us. Q. Did you never have any conversation previous to the time of your going in, either with Mr. Ingersoll or the cashier of the bank, Mr. Huelster? A. Before these bonds were sold or left there? Q. Yes. A. I did not. I never saw Mr. Ingersoll.

I did not talk with Mr. Huelster. I had nothing to do with these bonds. Q. Did Mr. Beckman tell you before the bonds were sold that he had agreed to sell these bonds to Mr. Ingersoll for 95 cents on the dollar? (Plaintiff's counsel objects to the question on the grounds that it is heresay and incompetent. Objection overruled, to which ruling the plaintiff, by his counsel, duly excepted.) A. He did. Mr. Beckman did the bargaining. Mr. Beckman took full charge and control of procuring all the blanks and negotiating the sale of these bonds. Q. You may state whether or not Mr. Beckman made any statement to you in regard to the fact as to whether Mr. C. T. Ingersoll was to purchase these bonds or simply negotiate for the township. (The plaintiff's counsel objected to the question on the ground that it is incompetent and immaterial and hearsay. The court overruled this objection, to which ruling the plaintiff, by its counsel, duly excepted.) A. He was going to sell them for the district. Q. Did Mr. Beckman ever tell you that? A. He did. Since these bonds were placed there I have been there once a week, to see if the funds for them had been returned; and until I got a little money from him, and an order for the material to build the school house, no money was received from the bank. At the time the bonds were left there by the board, I communicated my inability to collect the proceeds of these bonds to the other members of the board after my trips to Grand Rapids and attempts to collect. Talked with Beckman from time to time about it. We talked about it sometimes twice a week. The order for material that Mr. Ingersoll gave was taken to the lumber yard and figured out. Mr. Beckman took it there. I went along. We both went together. He was the clerk. The amount received by the township on that order was $216. By the Court: Who took this order to the lumber yard? A. I and Mr. Beckman. We both took it. Do not know who it was given to. They delivered the lumber to Mr. Beckman, and the farmers went together and hauled it out. After these bonds were issued, did not give any additional bond to cover the amount to be received from their

proceeds.   Only gave one bond as treasurer.   Cross-examination by Mr. Glaspell:   This order was given at Grand Rapids, in the bank.   Mr. Huelster wrote it.   I and Mr. Beckman and Mr. Kohan were present.   I went along with the board that day. The order was delivered to me, Mr. Haseleu.   The order was delivered to Mr. Haseleu for material to build the school house. I made an entry on my books as treasurer for this $216.   Don't believe I wrote it in the books.   I was in the bank when these bonds were delivered.   They were delivered to Mr. Huelster. Mr. Kohan, Mr. Beckman, and Huelster were present.   Mr. Huelster gave me that receipt.   Exhibit A.   The board ordered him to.   I didn't ask for any.   The board ordered it.   I was present at the time, and the members of the school board.   The treasurer was a member of the school board at that time.   I was present when the receipt was made out in my name.   It was not made out in the name of the three members of the school board, because I was put there to collect the money.   It was understood and agreed that I was to collect the money, and the board ordered me to collect the money after the bonds were left there.   Don't know who carried the bonds over there.   I didn't have them in my pocket.   I can't tell you if it was possible that I had them. I did see these bonds.   I was out and in when they were signed. There were two bonds.   They were signed in Mr. Whitman's office.   Did not put them in my pocket when we started over to the bank.   Mr. Whitman did not go over to the bank with us. I attended the meeting when the proposition was indorsed for the issuance of these bonds for this school township.   Do not know when it was.   First was in June, 1883.   Was at the meeting when the proposition was passed to issue these bonds. . Told at the meeting that Mr. Beckman had been talking with Mr. Ingersoll, and the bonds would bring 95 cents, and would rather issue bonds than orders.   Mr. Beckman was present, and talked also. Told them the same thing.   We all wanted the bonds issued.   I did explain the matter of issuing bonds at that meeting.   My reason for wanting to issue the bonds was that it was pretty hard

to get money for orders here at that time.    Mr. Beckman told me
that money could be realized on bonds.    All I stated was what
Mr. Beckman told me.    Don't know as I gave Mr. Beckman as
my authority at that meeting."    Defendant rests.    Gustave Papen-
fuss recalled on behalf the plaintiff:    "I was present at the school
meeting in Prairie school township when the proposition of issu-
ing the bonds · in question in this suit was brought up.    Mr.
Haseleu was present.    He stated about issuing bonds.    He just
spoke like this: 'We have spoken to Mr. Ingersoll, and we can
get 95 cents, and it is a better way to issue bonds.'    Cross-exam-
ination: ·He said, 'We.'"

We think there is no substantial conflict in the evidence upon any
feature of the case which is at all material.    The facts may be
condensed as follows:    After the bonds were voted, the school
board, consisting wholly of the defendants, caused the bonds to
be filled out in favor of C. T. Ingersoll; and after they were
properly registered the bonds were conveyed to the bank of
Grand Rapids,—all of the defendants going to the bank together,
—and the bonds were then and there delivered to the cashier of
the bank, who gave to Haseleu the receipt above set out.    On the
occasion of the delivery of the bonds to the bank no conversation
whatever was had between the cashier and the defendants, or
either of them, as to what disposition should be made of the
bonds; and it distinctly appears by the undisputed evidence that
defendant Haseleu had never at any previous time seen Ingersoll,
or had at any time sold or attempted to sell or negotiate a sale of
the bonds.    It appears by evidence offered on both sides that
previous to the voting of the bonds some arrangement had been
made with Ingersoll whereby the bonds were to be so disposed of
that they should yield $950 net to the school township.    The
details of such arrangement do not appear in evidence, but all
the circumstances of the transaction demonstrate the fact that
the bonds were delivered to the cashier of the bank pursuant to
such previous arrangement.    There were two acts done by the

N. D. R.—22.

cashier which can only be explained upon the theory of a pre-existing understanding, viz: the payment of $50, which was made at the time to Haseleu, and which money is accounted for, and the execution of the receipt which was delivered to Haseleu. These two acts of the cashier were not the result of any talk had at the time, and they are of a nature to show that an arrangement had previously been made, and one which was understood and assented to by the defendants. The terms of the writing show that the bonds were to be "placed." This expression is one that is well understood by bankers and business men generally, and it means that the bonds were to be sold. The circumstances preclude the idea that the sale of the bonds was to be wholly consummated, and the money paid over then and there, at the bank. The evidence shows that all of the defendants understood that the treasurer should collect the money when it was obtained out of the proceeds of a sale, which sale was not to be fully consummated at the bank at the time when the bonds were delivered. The understanding of all members of the board to the effect that Haseleu was to collect and receive the money derived from the sale of the bonds was natural and in entire consonance with the duties which the law imposes upon a school township treasurer. Hence it was quite proper that the receipt for the bonds should be made out to Haseleu. The law expressly states: "All money received from the sale of the bonds shall be paid to the treasurer of the school township." Section 2, Ch. 45, Laws 1883. The very terms of this statute import that when a school township sells its bonds the proceeds of such sale are to be paid over by those who make the sale to the treasurer. No such provision would be necessary if the treasurer, as such, was, under the law, empowered and required to negotiate a sale. Section 1 of Ch, 45 authorizes a school township to issue and sell its bonds for the purposes stated, and within the limitations of the statute. A school township is a municipal corporation for school purposes, and can only act through its officers. When the bonds have been voted the authority of the electors over the subject matter is

exhausted. The voters direct the issue and sale of certain bonds, but they cannot either issue or sell the bonds. This duty, in the absence of specific provisions to the contrary, devolves upon the governing officials of the corporation, viz: the school board. Section 1, Ch. 45, Laws 1883, provides that "the bond and each coupon shall be signed by the clerk of the school township, and countersigned by the director." Nor is there any provision which authorizes the treasurer to either issue, sign, or countersign the bond; nor is the treasurer, as such, authorized by law to sell or negotiate a sale of a school bond. Plaintiff assumes correctly that the duty of executing and issuing school bonds is devolved by law upon the school board, and plaintiff expressly charges in paragraph 6 of the complaint that the school board "did execute and did issue" the bonds. The truth of this averment is expressly admitted by the answer, and the testimony shows in detail how and in what way the bonds were "executed and issued." They were signed and countersigned by the clerk and director, and, after being registered, were delivered to the cashier of the bank by the board, pursuant to some pre-existing arrangement, the terms of which are not fully disclosed by the evidence, but were obviously known to the board, and concurred in by all the members of the board. This delivery of the bonds to the cashier of the bank is and constitutes the issue of the bonds, which the complaint alleges was an act of the board. No other issue—no other delivery of the bonds—appears to have been made. The plaintiff has signally failed to offer any evidence tending to support the essential averment set out in the seventh paragraph of its complaint as follows: "That both of such school bonds * * * were placed in the hands and custody of William Haseleu, the treasurer of such school township, for the purpose of negotiation and sale; and that said William Haseleu did negotiate and make sale of said two school township bonds with one C. T. Ingersoll for the whole sum of nine hundred and fifty dollars cash." Not only is there an entire failure to support this averment by proof, but the undisputed evidence negatives its truth, and shows beyond

the possibility of a doubt that the bonds were never placed in William Haseleu's hands for sale, or negotiation for sale, or for any purpose. The fact is made perfectly clear by the undisputed testimony that Haseleu never sold the bonds, and never nego-tiated with Ingersoll for their sale, either as treasurer, or in his private capacity, or at all. On the other hand, the evidence leaves no room for doubt that the board, acting in concert and collectively, "did execute and did issue" the bonds as alleged in the 6th paragraph of the complaint. Not only did the board "execute and issue" the bonds, but it also delivered the bonds to the cashier, and no other delivery appears ever to have been made. Counsel for appellant points to the terms of the writing signed by the cashier and delivered to Haseleu at the time the bonds were handed to the cashier. It reads, "Received of William Haseleu, Treas." etc., and counsel's contention is that the writing shows on its face that the treasurer delivered the bonds to the cashier, and that the writing is the best evidence of the transaction, and excludes any parol evidence which contradicts or varies the terms of the writing. It is true that the terms of the writing, when unexplained, are such as to indicate that the treasurer did deliver the bonds to the cashier; but, as has been seen, the writing was executed in a transaction had between the school board and the cashier of the bank, and the treasurer, as such, was not a party to it. In such a case the rule excluding parol evidence does not apply. 7 Am. & Eng. Enc. Law, p. 95. If the instrument can properly be classed as a receipt, the rule does not apply, and the parol evidence would, in that view, of course, be admissible; but we think the instrument partakes of a dual character, and is in part a receipt and in part a contract. In such instruments the rule is that the part which is a receipt may be explained or varied by parol. *Morris* v. *Railroad Co.*, 21 Minn. 91; *Burke* v. *Ray*, 40 Minn. 34, 41 N. W. Rep. 240. We think the writing is clearly a mere receipt, except as to that part in which it is stated that the bonds were received "for placing and credit." Hence the evidence outside the writing was proper to show the

circumstances and the relation of the parties to the transaction in which the writing was made.

Upon the facts thus appearing the question arises whether the treasurer and his official sureties, in an action for a breach of the condition of the treasurer's official bond, can be made responsible for the loss of the bonds or their proceeds, when such loss was wholly the result of the action of the school board. This question must be answered in the negative. Neither the treasurer nor his official bondsmen should be held responsible for the conduct of other officers over whom the treasurer, as such, has no control. The law and the official bond constitutes the sole measure of the treasurer's liability. Section 35, Ch. 44, Laws 1883, says: "The treasurer of every school township shall, before entering upon duty as such, give bond to such corporation, conditioned that he will faithfully and impartially discharge the duties of his office, (naming it fully,) and render a true account of all moneys, credits, accounts, and property of every kind that shall come into his hands as such treasurer, and pay and deliver the same according to law." The condition of the bond in suit substantially embodies this statute, and the bond and statute furnish the full measure of the treasurer's liability. The statute requires the treasurer to render a true account of money and property which shall come into his hands as treasurer. It requires no more than this. It appears in this case that the treasurer has fully accounted for whatever property and money has been placed in his hands as proceeds of the bonds in question, and also appears that the bonds themselves never came into his hands or custody as treasurer or otherwise. Never having come into his hands, the treasurer, as such, never became liable to account for or turn over the bonds.

While the language of an official bond should, under the established modern doctrine, receive a fair and reasonable interpretation, its obligation is nevertheless *strictissimi juris*. The obligors consent to be bound to a certain extent only and their obligation ought not to be expanded by judicial construction

beyond the fair terms of their consent. The liability of sureties extends to the official acts of the principal, and only to such acts. For acts done outside of official duty an officer may incur personal liability, but for such acts sureties are not responsible. These views have the amplest support in the authorities. *U. S.* v. *Boyd,* 15 Pet. 187; *Bank* v. *Ziegler,* 49 Mich. 157, 13 N. W. Rep. 496; *Taylor* v. *Parker,* 43 Wis. 78; *State* v. *Conover,* 78 Am. Dec. 54; *Gerber* v. *Ackley,* 37 Wis. 43; Murfree, Off. Bonds, § § 461, 462; Mechem, Pub. Off. § § 282, 283.

Appellant's counsel argues that it was the duty of the treasurer to object to the delivery of the bonds to the cashier of the bank, and that his silence constitutes negligence which renders him and his official sureties liable on his bond. This theory is untenable under the issues made by the pleadings. The action arises wholly upon contract and there are no averments in the complaint sounding in tort. The complaint counts on an alleged breach of the condition in the bond for not accounting for certain bonds which it is alleged were delivered to the treasurer. Upon the issues made no queston can arise as to whether the board or its members exercised due care in issuing the school bonds. We find, after a very careful consideration of the whole record, that the verdict and judgment are in accordance with law and the testimony, and therefore should be affirmed. The court will so order.

CORLISS J., concurs. BARTHOLOMEW, C. J., having been of counsel, took no part in the above decision.