## Bowman & Cockrell v. Baker, et al.

(Decided March 7, 1912.)

### Appeal from Rockcastle Circuit Court.

1. Deeds—Statement by Vendor After Deed Executed—Evidence, Incompetency of.—To allow a statement made by a vendor after the deed is executed, which is contrary to the provisions of the deed, and which was made in the absence of the vendee, to be introduced as competent evidence to affect the title of the vendee, would result in rendering deeds ineffectual.

2. Sam—Action to Cancel on the Ground of Fraud—Evidence.—In an action to cancel and set aside a deed on the ground of fraud, it being alleged that B. purchased the land from his brother and paid the purchase price with his own means, but caused the deed to be executed to his two sons for the purpose of cheating, hindering, delaying and defrauding his creditors, it was error to allow the introduction of testimony showing that the father of the boys states that he owned the land, that he paid for it, and upon this character of evidence authorize the court to appropriate the land for the father's debts. This would enable an insolvent parent to have his debts paid with property given his child.

C. C. WILLIAMS for appellant.

L. W. BETHURUM for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellants, in 1901, recovered a judgment against appellee, A. H. Baker, in the Rockcastle Circuit Court, for the sum of about $370. An execution was issued on the judgment and returned by the sheriff "no property found." Afterwards, on June 24, 1904, Robert Baker

and his wife executed a deed conveying 100 acres of land to John H. Baker and Robert Baker, Jr. The deed did not name any consideration, but recited that it was a gift of the vendor and his wife to their nephews, John and Robert Baker, Jr. This action was then instituted by appellants against A. H. Baker and the two boys, charging that A. H. Baker, the defendant in the execution referred to, purchased the land from his brother, Robert Baker, Sr., and paid the purchase price with his own means and caused the deed to be made to his boys, who were then twelve and fourteen years of age, for the purpose of cheating, hindering, delaying and defrauding his creditors. A. H. Baker filed an answer denying the allegations of the petition, and the guardian ad litem who was appointed for the boys, filed a similar answer for them. Appellants introduced three witnesses, Chas. and T. R. Mullins and C. C. Williams. The Mullinses testified, in substance, that since the execution of the deed they had heard A. H. Baker state, at different times, that he had bought the land from his brother and paid for it and had the deed made to his boys, and that they had heard Robert Baker, Sr., say that he sold the land to A. H. Baker and that he had paid for it one gray mare worth $150 and that A. H. Baker had directed the deed made to his boys. C. C. Williams testified that A. H. Baker came to him with the deed to his boys and wanted to get him to aid him in borrowing some money from a bank and told him he would mortgage the land to secure the bank; that upon reading the deed he told Baker that the deed was not to him but to his boys and he could not mortgage the land; that Baker answered that the land was his; that he had paid for it, or words to that effect. The court is of the opinion that this is not competent substantive evidence to affect the title of the boys in the land. If A. H. and Robert Baker, Sr., made statements of facts in their testimony contradictory to the alleged statements made to the Mullinses and C. C. Williams, then it would have been proper to have asked them if they made the above statements, fixing the time and place, and if they denied having done so, then the Mullinses and C. C. Williams could have properly testified as they did, for the purpose of effecting, if it did, the credibility of the Bakers as witnesses. To allow a statement made by a vendor after the deed is executed, which is contrary to the provisions of the deed and which was

made in the absence of the vendee, to be introduced as competent evidence to effect the title of the vendee, would result in rendering deeds ineffectual. It was also error to allow the introduction of testimony showing that the father of the boys states that he owned the land; that he paid for it, or words to this effect, and upon this character of evidence authorize the court to appropriate the land for the father's debts. This would enable an insolvent parent to have his debts paid with property given to his child. The lower court dismissed appellant's action, and if the above had been the only testimony produced, the court would have been correct. A. H. Baker testified that he did not know anything about the transaction until after the deed was made; that he was not present; that he did not turn the gray mare over to Robert Baker, Sr., for $150, or any other sum, as part payment of the land, and that he did not turn over to him any money or property of any kind for the land. Robert Baker, the vendor in the deed, testified to the same things. Appellants introduced one Carmichael, the deputy county court clerk who took the acknowledgment of Robert Baker and his wife to the deed, and he stated that while the deed shows no consideration paid; that it was a gift to the boys, he understood at the time he wrote it and took the acknowledgments that the actual consideration was a gray mare valued at $150, a wagon and some other small items of property. A Mrs. Bond testified that she was present at the time the deed was made and that the gray mare was valued at $150 and given by A. H. Baker to his brother, Robert Baker, Sr., for the land. If this had been all the testimony introduced by appellants, it would have left the matter in doubt, but after this action had been pending for some time, and while Robert Baker, Sr., was giving his deposition, it appears to have been discovered for the first time, as claimed by Robert Baker, Sr., that on the day the deed was executed, but after it was delivered to E. J. Baker, the mother of the vendees in the deed, E. J. Baker drafted a note for $350 as the purchase price of this land, made payable to Patsey Baker, the wife of Robert Baker, Sr., and E. J. Baker, the mother, signed her name and the name of the younger boy to it, and the other boy signed his own name to it. Soon after Robert Baker, Sr., gave his deposition, Patsey Baker filed a petition in this case asking to be made a party and for an enforcement of her lien on the land by reason of this note. Appel-

lants answered denying the claim and alleging, in substance, that it was fraudulent. Appellants took several depositions for the purpose of proving the fraudulent character of the note. Some of the witnesses professed to be acquainted with the handwriting of E. J. Baker and the two boys. They stated that neither the body of the note nor the signatures were in the handwriting of either of the boys or the mother; that the body of the note and the signature seemed to be in the same handwriting and that it appears to be a man's writing. The cashier of a bank who professed to be an expert judge of handwritings, was introduced and he testified to substantially the same facts, except that he did not say that he was acquainted with the writing of E. J. Baker and the boys. Patsey Baker, the claimant of the note, never testified, nor did E. J. Baker, the mother of the boys, nor is there any reason given why they did not. A. H. Baker testified that he let his brother have the gray mare three or four months after the deed was executed, and he explains why he let him have her, as follows: He says that he bought the mare and executed his note for $100 to a man by the name of Cole, that he bought her in Mt. Sterling, Ky., that he was unable to pay the note; that he told his brother, Robert, that if he would pay the note he could have the mare; that his brother did pay the note and he turned the mare over to him. Robert Baker, Sr., fixes the date of this transaction before the date of the deed. He says the note was brought into his neighborhood by John Morgan for Cole and that he let Morgan have a yoke of oxen valued at $100, for the note; that he took the note up and received the gray mare for it. He says that Morgan lived near Beattyville. Neither the deposition of Cole or Morgan was taken to substantiate this theory of the case, although several witnesses testified as to the bad reputation of both the Bakers for truth and veracity.

After a careful examination of the record, our opinion is that the note for $350, which is apparently signed by E. J. Baker and the two boys, was prepared with the sole view of defeating appellants in this action. If the note was real and just, Patsey Baker would have testified and so would Mrs. E. J. Baker and the two boys, and would have stated that the note was drawn on the day the deed was executed by Mrs. E. J. Baker and signed by herself and for one of the boys and that the

other boy signed his own name, as testified by Robert Baker, Sr. But if these things were true the deed was not executed without consideration as stated therein; the boys would, however, he entitled to hold it against appellants's judgment and against every person, except Patsey Baker, the holder of the purchase money note.

Considering all the testimony in the case, and giving it its proper weight, we conclude that A. H. Baker did give the gray mare and possibly other things, to his brother, Robert, for the land, and it was in accordance with his directions that the deed was made to the boys, therefore, appellants are entitled to subject the land to the payment of their judgment. The judgment is reversed and remanded, with directions to so adjudge.