NEILS JOHNSON ET AL., APPELLANTS, V. LEROY T. PETERSEN
ET AL., APPELLEES.

FILED JULY 10, 1917. No. 18896.

1. **Evidence:** HEARSAY: EXCEPTIONS. Declarations derogatory to the title of an ancestor, made by him after he transferred title, are not admissible as an exception to the hearsay rule merely because the grantee acquired the property without a monetary consideration. *Johnson v. Petersen,* 100 Neb. 255, overruled.

2. ——: ——: DECLARATIONS. Declarations against the pecuniary interest of the declarant when made may be admissible after his death as an exception to the hearsay rule.

3. ——: ——: EXCEPTIONS. While the entire statement made in connection with a declaration against the interest of the declarant may be admissible as an exception to the hearsay rule, such parts as are not against his pecuniary interest may be entitled to little credit, where the evidence shows that in those respects he had strong motives for misrepresentation.

4. **Trusts:** CONSTRUCTIVE TRUSTS: PURCHASER IN GOOD FAITH. Trust property conveyed by a trustee *ex maleficio* to his prospective wife in consideration of marriage cannot be followed by the *cestui que trust,* where the grantee acquired title in good faith without knowledge or notice that the property was purchased by her grantor with trust funds.

Opinion on motion for rehearing of case reported in 100 Neb. 255. *Former judgment vacated, second paragraph of syllabus overruled, and judgment of district court affirmed.*

CORNISH, J.

This action was begun by the heirs of Lena Petersen, first wife of Soren T. Petersen, deceased, and who died in 1875 without issue, to enforce a trust in the property in controversy, because it was purchased with the proceeds of a converted draft, Lena Petersen's share in a legacy. The defendants are the children of the deceased and his second wife, Maren, now Mrs. Hansen. Defendants contend that the beneficiaries of the trust cannot follow the property, even though so purchased, because it had been

conveyed by Petersen to his second wife (their mother) in 1876 in consideration of marriage, and because in divorce proceedings in 1892 between their mother and Petersen the property was ordered conveyed to their children, the defendants. The trial court dismissed the action, and plaintiffs appealed. In this court the judgment was reversed and title to the property quieted in plaintiffs. *Johnson v. Petersen,* 100 Neb. 255.

Upon motion for rehearing the defendants contend that this court erred in its consideration of the declarations of Petersen, made after he had conveyed the property, and in the rule announced in the second paragraph of the syllabus as follows: "In a suit to declare a trust in lands, the declarations of the ancestor through whom the defendants acquired title, without the payment of a monetary consideration, may be received in evidence against the defendants who stand in the place of the ancestor."

The declaration referred to is evidenced by oral testimony and by a letter written by the declarant just before he died, as follows:

"Omaha, Nebr., June 6, 1912.

"Nels Johnson, Hombolt, Iowa:

"I thought best to write you a letter, as I don't tink my time is long for this world. If I know that time you was her I would had a talk with you. I anderstant you was here to investigat the mony which Lena got from her ant. As I haven't long to live I will tell you about it. I got the money to week after Lena was dead in 1875. I tout it was all right, so I bought lot 13—20 Nelson's addition on which I built 3 houses, No. 975, 979, 971 North 27 street, Omaha, Nebr. I got the money in a draft to which I had to sign Lena name. The Duth (Dutch) concil said it would be all right so long as she was dead she could not do it. I did not write you that time as I did not know your address. I did not want to part with it, but the law say I must. That dam bich of a woman beat me out of it so I had to sumit. The property is now in possession of four children, namely Leroy Petersen, Leona McCutchen, Lillian Deitrick and

one what goes by the name of Emilie.  She don't be long to me.  I will send this to my Brother to send to you after my death, so you will know when you get this I will be with Lena.  Now I think I am square with the world and hope for rest.

"(Signed)   S. T. Petersen."

Under our system of jurisprudence, hearsay testimony is not generally admissible in evidence.  An exception to this rule, based upon the principle of experience, is that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false, or heedlessly incorrect, and, being thus sufficiently guaranteed, is admissible in evidence, though oath and cross-examination are wanting; the witness being unavailable because of death.

One of the applications of this exception to the general rule is that which permits declarations derogatory to his title of one who at the time holds the title.  Or, as stated in negative form in *Consolidated Tank Line Co. v. Pien,* 44 Neb. 887: "The declarations of a former owner of land are not admissible as against those claiming under him when made after he has conveyed the land."  The owner of real estate is not likely to make untrue statements in derogation of his title.  Declarations derogatory to title, made after parting with title, have not that guaranty of their truth which the law requires; nor does the law recognize that the declaration is more likely to be true if the title has been parted with without consideration, than if the conveyance was for valuable consideration paid.  In either case the declaration is ordinarily inadmissible.

The declarations of an ancestor, from whom those claiming title derived their title as heirs, are within the exception to the hearsay rule and are admissible in evidence. The second paragraph of our syllabus, above quoted, is inaccurate in two respects:  First, it appears to make the rule depend upon whether the defendants acquired title without payment of a monetary consideration, when, in fact, the character of the consideration does not affect the rule as a rule of evidence.  Second, the rule announced is

not applicable to the case in hand. Here, the children did not acquire title as heirs through an ancestor, but through deeds made long before Petersen's death, and the declarations were made after parting with title. Considered merely as declarations derogatory to title, they are inadmissible. The rule announced in the second paragraph of the syllabus, in so far as it is contrary to the law as herein stated, should be overruled.

We are of opinion, however, that the particular declaration under consideration was admissible by virtue of another application of the general exception to the hearsay rule above stated. A declaration, which when made is directly contrary to the pecuniary interest of the person making it, is admissible in evidence. An admission that one has converted to his own use the money of another is within this class. It follows that the declarations of Petersen, stating that he converted the money of his first wife, which, if true, would constitute him a trustee *ex maleficio* of a constructive trust and render his estate liable therefor, are admissible in evidence for what they are worth. For a discussion of the rules of evidence applicable, see 2 Wigmore, Evidence, secs. 1082-1086, and 1457-1461; also, 4 Chamberlain, Modern Law of Evidence, secs. 2769-2774.

Upon further consideration, we are of opinion that the judgment of the trial court must be affirmed for other reasons of law and of fact. Defendants contend that the second wife was a purchaser for value without notice of the trust, and that therefore plaintiffs are not entitled to follow the trust property into defendants' hands. Petersen married his second wife, mother of defendants, September 29, 1876. He executed the deed which conveyed to her the property in controversy September 25, 1876. She testifies that it was conveyed to her in consideration of the intended marriage; that she did not know how Petersen acquired the property. On behalf of plaintiffs, besides Petersen's letter, there was testimony by his third wife that she heard Petersen say that the property was conveyed to

the second wife to protect it from possible creditors of Petersen, and that the second wife knew how he had acquired the property. Nowhere does she testify distinctly as to statements made either by Petersen or his second wife, showing when the wife first knew how Petersen had acquired the property; nor does Petersen in either his letter to Johnson or in the one to his third wife state that his second wife knew of the conversion of the money at the time she accepted the deed. A belief that she did know would rest mainly upon inference and be directly contrary to her sworn testimony. Petersen's declarations, when admitted in evidence, are not of much value for determining the real point in controversy. While his statement as to what he did with the money is probably admissible, as part of his entire statement, yet, considered by itself, that part of it telling what he did with the money is not a statement against interest, but the contrary. Petersen was in the money-lending business, and the evidence would indicate that he was at all times a man of some means. It would be to his interest to have the property, which he had parted with and which finally went to the children, appropriated for what he owed his wife's heirs, instead of being taken out of his own estate. The record, not his statements, shows that the property in dispute was not purchased until nearly a year after he received the money. It is hard to be sure that this particular money went into the particular property in dispute. In his love letter, written to his third wife at about the time he was divorced from his second wife, he speaks of the children (the defendants) as bastards. Afterwards, he seems to have been on friendly terms with one of the boys, but in his last letter, written just before his death, he speaks of Emilie as not his child. His malice and the malice of his third wife toward his second wife and the children are apparent from the testimony. His declarations, in the light of all the testimony, while against pecuniary interest, as above stated, shows generally an unfriendly feeling toward his second wife and family. We are of opinion that they are not suffi-

cient to overcome the testimony of the second wife that she was the *bona fide* purchaser of the property in dispute without knowledge or notice of any fraud upon her husband's part.

It is suggested as something extraordinary for Petersen to deed the property to his second wife just before marriage. We do not think so. It is entirely within the proprieties for a man about to marry a woman to give, and for her to take, in consideration of marriage, the property which is to be their home. If fairly offered in the right spirit, most women would be glad to take it as a proof of affection. Besides, this was Petersen's manner of wooing. In his letter to his third wife, he tells her that, if she will come and live with him, he will give her the old piano, or, if she wishes, buy her a new one. This last letter, written at about the time he was divorced from his second wife, indicates that previous thereto there had existed an improper, if not illicit, relation between his third wife and himself. She did come to live with him, and they sustained illicit relations with each other for several years before their marriage. She afterwards commenced divorce proceedings against him. Neither her testimony nor his statements are entitled to the highest credit. His conscience draws too fine a line. Any friend could have told him that to his wife's people, whose property he had converted, there would be nothing sacred in the particular property in controversy, unless it would be its value. How easy it would have been for him to have taken the other property, which the evidence shows he owned and was worth more than this, converted it into cash, or given it to his wife's heirs. They would have been entirely happy and his conscience quieted. Instead of that, his conscience drives him to go elsewhere for property to pay his wife's relatives what he owes them, even though it forces him to violate the solemn decree of the court in a suit where he was a party, and two solemn deeds of conveyance executed by him.

When Petersen's second wife obtained a divorce from him, the parties agreed to the terms of alimony. The decree awarded to the wife $5,000 and provided that the property now in dispute should be conveyed to the children; the wife to have the custody of the children and the use of the property until the youngest child should become of age, provided that she supported them.   One of the grounds alleged by her for a divorce was that he insisted on appropriating the rents received from the property in dispute, although he was worth $40,000.   Both of the parties, in conformance with the decree, joined in the deed to the defendants.   It is contended by defendants that, the property being awarded in lieu of payments in money, they are in the same position as if they had been awarded money and with the money had purchased the property.

If, at the time the property was deeded to the second wife, she took it in consideration of marriage, and we find that she did, then she would be a *bona fide* holder for value, unless she took it with notice that it was trust property. We find that she did not then know it was trust property. We are of opinion, also, that the deed made by the husband and wife, pursuant to the decree of the court in the divorce suit, constituted the children innocent purchasers for value of the property in dispute.   For decided cases bearing upon these questions, see *Leininger Lumber Co. v. Dewey,* 86 Neb. 659; *National Exchange Bank v. Watson,* 13 R. I. 91; *Bowman & Cockrell v. Baker,* 147 Ky. 437; *Sloan v. Coburn,* 26 Neb. 607; *McClatchey v. Anderson,* 84 Neb. 783; *Pottenger v. Bailey,* 8 Ohio Dec. (Reprint) 106; *Ryder v. Ryder,* 244 Ill. 297; *Scheps v. Bowery Savings Bank,* 97 App. Div. 434, 90 N. Y. Supp. 26.

For the reasons given herein, the statement of law announced in the second paragraph of the syllabus of our previous opinion is overruled, and the judgment of the trial court is

AFFIRMED.

MORRISSEY, C. J., and HAMER and DEAN, JJ., dissent.