H. H. PERRY, as Administrator of the Estate of Franziska Erdelt, Deceased, Appellant, v. MAX ERDELT and Alfred Erdelt, Respondents.

(231 N. W. 888.)

Opinion filed August 1, 1930.

*F. J. Graham* and *T. L. Brouillard,* for appellants.

*E. E. Cassels,* for respondent.

NUESSLE, J. This is a contest between the plaintiff as administrator of the estate of Franziska Erdelt, deceased, and the defendant, one of the sons of the decedent, who claims as donee certain property which had belonged to her.

Franziska Erdelt was a widow. Her husband died in 1919. Prior to his death he deeded to her a half section of land and gave her all of his personal property. The Erdelts had nine children, five girls and

four boys. After her husband's death Mrs. Erdelt continued to live on the farm. Her two younger sons, Max and Alfred, lived with her and operated the farm under an agreement whereby she received a portion of the net proceeds and they received a portion. In 1924, Mrs. Erdelt executed a deed of the real estate to Max. She left this deed and certain certificates of deposit and shares of corporate stock, together with a bill of sale transferring all of the personal property to Max, with her banker Crabtree for safe-keeping. The deed and other papers were enclosed in an envelope on which was endorsed the following:

## "ESCROW"

"The inclosed deed to $N\frac{1}{2}$ 27–129–63 and Bill of Sale to all of my personal property, executed in name of Max Erdelt, are this day deposited with the First National Bank of Ellendale, North Dakota, with instructions to deliver same after my death to the said Max Erdelt, upon payment to said Bank for credit of Alfred Erdelt of the sum of Four Thousand Dollars."

This endorsement was made by Crabtree and was signed by Mrs. Erdelt. In 1925, Alfred left the farm. He took with him a portion of the personal property which he claimed either by gift from his father or from his mother or brother. Max was married in 1925 and he and his wife continued to live on and operate the farm. His mother, Franziska, lived with them. The proceeds of the farming operations were divided, Mrs. Erdelt receiving one half and Max the other half. In 1927, or the early part of 1928, Mrs. Erdelt went to the bank and procured the envelope containing the deed and other papers saying she wanted to make some changes in them. She did not return the papers to the bank. She died in December, 1928. After her death Max put the deed of record and he and his wife executed a mortgage on the premises for $4,000 to Alfred. Max also claimed ownership of all of the personal property including the certificates of deposit and the money deposited on open account in the bank. Thereafter the plaintiff Perry was appointed administrator of the estate. He demanded the certificates of deposit and other personal property and contended that the land belonged to the estate; that though the deed

had been executed and was recorded, it had never been in fact delivered and so was inoperative. Max refused to turn over the personal property and continued to occupy the land under a claim of ownership under the deed. So the administrator brought this action to set aside the deed to Max, the mortgage executed to Alfred by Max and his wife, and to quiet title in himself, to recover the personal property, and for an accounting of the rents and profits. The defendants Max and Alfred both answered. Max denied the claims of the administrator and set up his ownership of the property, both real and personal, by virtue of the deed and bill of sale and a delivery thereof to him. He also counterclaimed seeking to recover from the plaintiff the amount of Mrs. Erdelt's checking account, possession of which had been obtained by the administrator. Alfred, answering separately, denied the plaintiff's claim and set up his interest in the real property under the mortgage executed by Max and his wife. The case was tried to the court without a jury. When it came to trial the defendants objected to the introduction of any evidence on the grounds that the complaint failed to state a cause of action and that there was a misjoinder of causes of action. The objection was overruled. Evidence was offered in support of the issues as made by the pleadings. The court found and held that there had been no delivery of the deed; that the deposit of the deed and other papers with the bank in 1924 was a deposit for safekeeping only and that Mrs. Erdelt had the right when she desired to do so to procure a return of the same; that there was no transfer under the terms of the deed or the notation on the envelope in which the same was contained; and that the real property was the property of the estate. The court further found and held that the certificates of deposit, the shares of corporate stock, and the money on deposit in the bank, had not been transferred or given to Max Erdelt and that the same were the property of Mrs. Erdelt at the time of her death and so were part of the estate. The court further found and held that all the other personal property had been given to Max by Mrs. Erdelt in 1924 and that the gift had been reaffirmed in 1928. Judgment was entered accordingly and the defendants appeal. The plaintiff also perfected a cross-appeal claiming that there had been no gift or transfer of the personal property to Max and that the court had erred in refusing to adjudge costs in favor of the plaintiff.

The first question that presents itself is as to the propriety of the action of the trial court in overruling the defendants' objection to the introduction of any evidence. It is clear that the administrator was clothed with authority to bring action to quiet title to any real property belonging to the estate. See Comp. Laws 1913, § 8798; Druey v. Baldwin, 41 N. D. 473, 172 N. W. 663, 182 N. W. 700; Magoffin v. Watros, 45 N. D. 406, 178 N. W. 134. Likewise he had the authority and it was his duty to enforce his right as administrator to any personal property belonging to the estate. See §§ 8798 and 8801, Comp. Laws 1913. Even if he could not properly vindicate the title to both the real and personal property in the same action, the defendants, if they saw fit to object to his doing so, must raise the point by demurrer. See Comp. Laws 1913, § 7442. And by answering they waived the right to object on the ground of misjoinder of causes of action. See Comp. Laws 1913, § 7447. Viewed and construed liberally as against the challenge thus tardily interposed to its sufficiency, the complaint stated a good cause of action. When the court overruled the objection to the introduction of evidence no further objection was made and the cause was tried to the court without a jury on all the issues tendered.

During the course of the trial numerous questions were raised touching the admissibility of evidence, particularly with respect to the acts and statements of Mrs. Erdelt. The trial court was very liberal in his rulings and admitted practically all of the evidence offered, stating he would later pass upon the admissibility of that which was objected to. We must in considering the record presume that he did this, and if, disregarding the evidence which was properly objectionable, the record is sufficient to sustain the findings as made, the judgment will not be disturbed.

The defendants contend that when Mrs. Erdelt executed the deed and bill of sale and deposited them with the bank in 1924, that she delivered them to the bank which received them as the agent of Max and title at once passed; that by such delivery she put it out of her power to reclaim the instruments and that the banker had no right to return them to her when she demanded them in 1928; that regardless of what she did with the papers after she received them back, title to

the property, both real and personal, was in Max, and that she could not divest this title.

The banker testifies that the envelope with its contents was left in the bank for safe-keeping. The endorsement on the envelope was made by him and not by Mrs. Erdelt, although she affixed her signature to such endorsement. The determinative question is purely a question of intent on her part and that intent must be determined as of the time when she left the papers with the bank and not when she reclaimed them. If at the time she left the papers she intended to make an absolute delivery and to pass title to the property subject to her use during her lifetime, then she could not reclaim them. If the papers were left there merely for safe-keeping and subject to any change that she might thereafter desire to make, then she could take them whenever she wished to do so. The burden rested upon the defendants to show a delivery of the papers for the benefit of Max. Evidence of subsequent words and acts of Mrs. Erdelt with respect to her intention at the time she left the papers with the bank is competent and admissible. She demanded and received the envelope and its contents and the banker delivered them over to her. Some evidence was offered by the defendants as to statements made by Mrs. Erdelt after she left the papers with the bank and before she reclaimed them to the effect that she had given the property to Max. These declarations were competent in support of the gift. However, the trial court found that under all the circumstances there was no actual delivery and we do not feel that the record is such as to warrant us in overturning this finding. See Arnegaard v. Arnegaard, 7 N. D. 475, 41 L.R.A. 258, 75 N. W. 797; O'Brien v. O'Brien, 19 N. D. 713, 125 N. W. 307; Magoffin v. Watros, 45 N. D. 406, 178 N. W. 134, supra; and Luther v. Hunter, 7 N. D. 544, 75 N. W. 916, where all the questions here involved are fully considered and discussed.

But the defendants did not rest their case wholly upon the proposition that there was a complete delivery and gift when the envelope containing the deed and other papers was left with the bank in 1924. They insist that even though there was no complete delivery and gift at that time and Mrs. Erdelt had the right to reclaim the papers, nevertheless she later and in October, 1928, reaffirmed the gift by delivery of the deed, bill of sale, and other papers to Max. In any

event, after her death Max was in possession of all of these papers. He put the deed and bill of sale on record and continued to assert title to the property involved under and by virtue of them. He and his wife executed and delivered their note and mortgage in the sum of $4,000 to Alfred and Alfred accepted the same in lieu of the payment of $4,000, stipulated to be made to him by the endorsement upon the envelope and by the alleged direction of Mrs. Erdelt at the time she was said to have given the papers to Max. On the trial Max attempted to establish that shortly before her death his mother had handed the envelope containing the deed and other papers to him with the statement that the property was his upon his paying to Alfred the sum of $4,000. He proferred his own testimony and that of his wife to this effect. The plaintiff objected to this testimony on the part of Max as to what was said and done by his mother and himself at the time of the alleged gift. This objection was predicated upon the provisions of ¶ 2 of § 7871, Comp. Laws 1913, providing that in a civil action by or against administrators . . . neither party shall be allowed to testify against the other as to any transaction whatever with or statement by the intestate unless called to testify thereto by the opposite party. Clearly the objection thus made was good as against the testimony of Max with respect to the transaction. See Druey v. Baldwin, 41 N. D. 473, 172 N. W. 663, 182 N. W. 700; Brady v. Brady, 50 N. D. 114, 194 N. W. 938; Frink v. Taylor, ante, 47, 228 N. W. 459. This objection, however, was not good as against the testimony of Max's wife and the court properly permitted her to testify as to what was said and done between Mrs. Erdelt and Max at the time. Frink v. Taylor, supra. This testimony, however, was the only competent evidence in the record tending to establish the gift to Max in October, 1928. The effect of it was merely that on the occasion in question Mrs. Erdelt came out of her bedroom, handed Max the envelope which was then sealed, and said that the property was his upon condition he pay Alfred $4,000. The witness did not know what was in the envelope. She did not read the endorsement upon the envelope, nor did she see, then or afterwards, the papers that were contained in it. On the other hand, it appears on behalf of the plaintiff from his own testimony (though denied by Max) that shortly after he was appointed administrator he talked with Max about the property in-

volved and Max at that time told him that he claimed it under the deed and bill of sale and said that he had found the envelope containing these instruments in the bureau drawer after his mother's death. The testimony of another disinterested witness as to conversations with Max concerning the matter is of similar import. In any event, the trial court who saw and heard the witnesses found that there was no delivery of the instruments in question to Max. We think that this finding is amply sustained by the record.

The trial court found that the personal property other than the certificates of deposit, the money deposited on open account, and the shares of corporate stock, was the property of Max; that it had been given to him by Mrs. Erdelt some time prior to her death. There is considerable conflict in the evidence with respect to this property. It appears that from 1919 to 1925 the taxes on it were paid by Alfred and Max who were then operating the farm and using the property. Thereafter it was assessed to Max and the taxes were paid by him alone. It is true that Max in numerous instances made deposits to the credit of his mother's checking account in the bank in the amount of one-half the proceeds from the farming operations, but these deposits are explained by reason of the fact that when Mrs. Erdelt gave the property to Max she stipulated that she was to have half of the proceeds from the farm during her lifetime. The defendants also offered in evidence the testimony of various witnesses, some of them wholly disinterested, to the effect that on occasions subsequent to 1924 Mrs. Erdelt had told them that the personal property belonged to Max. This evidence was objected to by the plaintiff on the ground that it was incompetent. The trial court received it, however, and we think properly. These statements were adverse to the interest of Mrs. Erdelt. They would have been admissible as against her, and she being dead they were admissible against the administrator. On the other hand, statements made by Mrs. Erdelt to the effect that the property belonged to her were not admissible as against the defendants. See Arnegaard v. Arnegaard, 7 N. D. 475, 41 L.R.A. 258, 75 N. W. 797, supra; O'Brien v. O'Brien, 19 N. D. 713, 125 N. W. 307; Johnson v. Peterson, 101 Neb. 504, 1 A.L.R. 1235, 163 N. W. 869; Wigmore, Ev. §§ 1082, et seq.; 22 C. J. 363, et seq. In considering the matter of Max's claim it must be remembered that his father died

in 1919. From that time until Mrs. Erdelt's death, Max and Alfred, and later Max and his wife, lived upon and operated the farm. During this period Mrs. Erdelt made substantial gifts of money to her daughters and to her other sons. Fairness and justice under the circumstances would tend to confirm the contention of Max that his mother had given this personal property to him. Considering all the evidence with respect to this personal property we are of the opinion that the finding of the trial court that Mrs. Erdelt had given it to Max is well sustained.

The judgment of the district court is affirmed, neither party to have costs on this appeal.

BURKE, Ch. J., and BURR, BIRDZELL and CHRISTIANSON, JJ., concur.