[File No. 7130]

ELWOOD NORGART, Appellant, v. WHEELER HOSELTON and Ronald Hoselton, Respondents.

(39 NW2d 427)

Opinion filed October 10, 1949

*H. C. DePuy,* for appellant.

*Harold D. Shaft,* for respondents.

BURKE, J. In this action, plaintiff sought to recover damages suffered by him because of the death of his wife, whose injury and death he alleged were proximately caused by the intoxica-

tion, gross negligence and willful misconduct of the defendant, Roland Hoselton. The defendants in their joint answer denied any intoxication, negligence or willful misconduct on the part of Roland Hoselton and alleged contributory negligence on the part of plaintiff's deceased wife. The action was tried before a jury in the District Court of Pembina County. The jury returned a verdict in favor of the defendants for the dismissal of the action and judgment was entered in accordance with the verdict. Plaintiff has appealed from the judgment and has specified eleven claimed errors. The defendants concede that some errors may have been committed during the course of the trial, but say that the errors, if any, were not prejudicial because there is no evidence in the record of intoxication, gross negligence or willful misconduct on the part of the defendant Roland Hoselton. If this contention is correct it is decisive of this appeal.

A judgment will not be disturbed because of errors committed upon a trial of an action if the record discloses that the unsuccessful party would not have been entitled to judgment in any event. Prairie School Twp. v. Haseleu, 3 ND 328, 55 NW 938; Walton v. Mattson, 22 ND 532, 135 NW 176; Baird v. Nelson, 60 ND 503, 235 NW 351.

Concededly plaintiff's wife was, at the time of her injury and death, a guest of the defendant Roland Hoselton. Plaintiff would therefore be entitled to judgment in this action only in the event that the evidence was sufficient to permit a reasonable conclusion that his wife's injury and death were proximately caused by the intoxication, willful misconduct or gross negligence of the defendant Roland Hoselton. Schwager v. Anderson, 63 ND 579, 249 NW 305. Chapter 39–15 NDRC 1943.

On the afternoon of April 8, 1947, when Roland Hoselton and a friend named Bergstrom were about to leave Drayton, N. D., upon a trip to East Grand Forks, Minn., and return, in an automobile owned by Wheeler Hoselton, the father of Roland, plaintiff asked Roland if he would stop in Grand Forks, N. D., pick up his wife and small son and transport them back to Drayton. This, Roland agreed to do. At some time in the afternoon before leaving Drayton, Roland Hoselton and Bergstrom had each

drunk, at most, four bottles of beer. They left Drayton at about 5:15 p.m., drove at an estimated speed of from 40 to 50 miles per hour and arrived in Grand Forks at about 6:30 p. m. The distance from Drayton to Grand Forks is approximately 48 miles. Only an estimation of their rate of speed was possible because the speedometer on the car was not in working order. Upon their arrival in Grand Forks, they called at the home where plaintiff's wife was visiting and were informed by her that she would be ready to leave for Drayton in 45 minutes. They then proceeded to East Grand Forks to transact their business. During their stay in East Grand Forks, which was approximately 45 minutes, Hoselton and Bergstrom each drank two one-ounce drinks of whiskey diluted with coco-cola. They returned to Grand Forks, picked up plaintiff's wife and small son and started back to Drayton at about 7:30 p. m. Plaintiff's wife sat in the middle of the front seat of the car between Hoselton and Bergstrom. She held the baby on her lap. Both Hoselton and Bergstrom testified that the estimated speed of the car on the trip back toward Drayton was from 40 to 50 miles per hour. The accident occurred at a point upon Highway 44 about 7 miles south of Drayton. At that point the highway was 24 to 26 feet wide. The shoulders of the highway sloped gradually to a ditch on each side. The shoulders were soft and there was water in the ditches. Hoselton testified that immediately prior to the accident he was driving on the right hand side of the highway at an estimated speed of from 40 to 50 miles an hour; that his right front wheel struck an unseen soft spot which extended from the shoulder into the highway, the car veered to the right, the wheels on the right hand side crossed the shoulder onto the slope into the ditch but the left hand wheels stayed up on the shoulder, he proceeded in this manner for some distance trying to steer the car gradually back to the highway, the front wheels then struck a rut or obstruction of some sort which was hidden in the grass, the car turned sharply to the left, came up on the highway and rolled over an undetermined number of times. It came to rest in an upright position. Both Hoselton and plaintiff's wife were thrown from the car. Plaintiff's wife received injuries from which she died the same evening. Hosel-

ton testified that, immediately upon feeling his right front wheel catch in the soft spot, he took his foot off of the accelerator but did not apply the brakes, because, in his judgment, that was the worst thing he could do.

Fortier, who was one of plaintiff's witnesses, testified that on the same evening, at about the same time, he was driving from Grand Forks to Drayton. The Hoselton car passed him a few miles north of Grand Forks. Later on he passed the Hoselton car. He drove at a speed of 40 to 45 miles an hour and remained in front of the Hoselton car until he stopped at a tavern near the intersection of Highway 17 with Highway 44. He remained at the tavern for 10 or 15 minutes. Upon leaving the tavern, he drove north upon Highway 44 and was the first person to arrive at the scene of the accident which occurred a short distance north of the intersection of Highways 44 and 17.

Thompson, another of plaintiff's witnesses, testified that as he was driving eastward on Highway 17 and approaching the intersection of Highways 17 and 44, he saw "lights going in a circle" on Highway 44. The time was 8:50 p. m. He knew there had been an accident. He was not more than a quarter of a mile away as the crow flies. He speeded up and reached the scene of the accident after Fortier had reached it.

Thompson and Fortier brought the injured persons to Drayton for treatment. Thompson brought Hoselton in his car and Fortier brought plaintiff's wife, small son and Bergstrom. Neither Fortier nor Thompson was asked any questions concerning an odor of alcoholic beverages upon either Hoselton or Bergstrom. The physician who treated Hoselton immediately after the accident testified there was no such odor upon his breath. He said, "I even mentioned to the nurse working with me that apparently there had been no drinking in this accident."

Sheriff Aafedt of Walsh County, who investigated the accident testified that the surface of the shoulder of the highway was soft and that the Hoselton car had made well defined tracks after it left the main traveled portion of the highway. He measured these tracks. His measurements showed that the distance from the point where the car first veered to the right to the point where it turned back toward the highway was 248

feet and the distance from the point where the car came back onto the highway to the point where it finally came to rest was 74 feet. These observations and measurements were made at night shortly after the accident.

Does this record present any evidence of intoxication, gross negligence or willful misconduct? There is some evidence that Hoselton had drunk some intoxicants. According to his testimony he drank two beers in the afternoon. The sheriff testified that he said he had had four beers. At East Grand Forks he drank two one ounce drinks of whiskey, diluted with coco-cola. The record does not show at what time in the afternoon he drank the beer. It does show that he came to Drayton after the noon meal on the farm and remained there until he left for East Grand Forks at about five o'clock. The last beer was drunk at least four hours before the accident and for all the record shows it may have been drunk six or seven hours before. The two "whiskey cokes" were drunk two hours before the accident. There is no evidence whatever of intoxication at the scene of the accident. The witnesses Fortier and Thompson who brought Hoselton and Bergstrom to the hospital at Drayton did not testify as to any evidence of intoxication. Although these witnesses had been in close contact with Hoselton and Bergstrom they were not asked any questions concerning odors of intoxicants. The physician who treated Hoselton testified positively that there was no odor of intoxicants upon his breath and stated that he remarked to his nurse that "apparently there had been no drinking in this accident." The jury, of course, were not required to believe the testimony of Hoselton and Bergstrom concerning the amount of liquor consumed by them. However, if they did not believe this testimony there is no evidence in the record of any drinking at all. They would not be at liberty to disregard this testimony and substitute therefor a speculation that Hoselton had drunk more than he admitted, in the absence of any other evidence of drinking or intoxication. Considering the amount of intoxicating liquor consumed by Hoselton, the elapsed time between the drinking and the accident, and the testimony of plaintiff's witnesses who aided and treated Hoselton both at the scene of the accident and in Drayton im-

mediately thereafter, we are satisfied that the evidence is not sufficient to permit a legitimate inference that Hoselton was intoxicated at the time of the accident.

The only question as to gross negligence or willful misconduct is whether Roland Hoselton was driving the car at a speed which was so excessive that it amounted to gross negligence or willful misconduct. The accident occurred upon Highway 44 at a point about 7 miles south of Drayton or about 41 miles from Grand Forks. At this point a speed of fifty miles an hour was presumptively lawful. In case such speed would be unsafe it would not be lawful. Section 39–0902 NDRC 1943. Roland Hoselton was familiar with the highway. He had driven over it in the opposite direction in daylight about four hours before the accident. There is no evidence of any apparent unsafe condition in the highway. Hoselton testified that his speed was from forty to fifty miles an hour. This testimony is corroborated both by the elapsed time and by the testimony of plaintiff's witness Fortier. Hoselton left Grand Forks at about 7:30 p. m. He drove without any stops to the place of the accident. The distance was 41 miles, the elapsed time was an hour and twenty minutes. Fortier testified that a short distance out of Grand Forks, the Hoselton car passed him, a little later he passed the Hoselton car and stayed ahead of it all the way to the intersection of Highways 17 and 44, where he stopped at a tavern for 10 or 15 minutes. When he left the tavern and proceeded north on Highway 44 he was the first person to reach the scene of the accident. He arrived there before Thompson who saw the accident happen from a distance of about one fourth mile as he was approaching Highway 44 upon Highway 17. Thus Fortier must have arrived immediately after the accident happened. This testimony requires the conclusion that it took Hoselton 10 to 15 minutes longer than it did Fortier to drive from the place where Fortier passed his car to the scene of the accident. Fortier testified that he drove at the rate of 45 miles an hour. There is no other direct evidence in the record upon the question of speed and unless the jury would have been justified in drawing an inference of excessive speed from the

testimony as to the measurements made by Sheriff Aafedt, there is no evidence of excessive speed.

The sheriff testified that it was 248 feet from the point where the Hoselton car first started to leave the highway to the point where it turned back toward the highway and 74 feet from the point where it came back on the highway to the point where it stopped. We do not see how this testimony would justify an inference that the Hoselton car was traveling at a speed greater than fifty miles an hour. The first 248 feet the car was coasting. If it had been traveling at fifty miles an hour it was moving at a rate of almost 75 feet per second. How much of its initial speed would it loose in coasting for three or four seconds? At what speed would it have to be going to require 74 feet of rolling and sliding to stop it? We know of no way of reaching a reasonably accurate answer to these questions by inference. The figures indicate some speed but upon the question of whether they indicate an initial speed on the part of the Hoselton car of more than 50 miles an hour, we can only speculate. The jury could do no more.

Whether the jury could disregard Roland Hoselton's testimony that his right front wheel struck a soft spot in the highway and from the fact of the accident draw an inference that he had inadvertently driven the car too far to the right and onto the soft ground of the shoulder is a question we do not need to consider.

"Gross negligence is, to all intents and purposes, no care at all. It is the omission of the care which even the most inattentive and thoughtless seldom fail to take of their own concerns. It evinces a reckless temperament. It is a lack of care which is practically willful in its nature." Erickson v. Foley, 65 ND 737, 744, 262 NW 177.

Mere inadvertence neither evinces a reckless temperament nor does it exhibit a lack of care which is practically willful. It is not gross negligence. 60 CJS 982; Whitfield v. Wheeler, 47 SE2d 658, 76 Ga App 857; Harvey v. Clark, 6 NW2d 144, 232 Ia 729, 143 ALR 1141; Ascher v. Friedman, 110 Conn 1, 147 A 263.

We think it clear therefore that there was no evidence of in-

toxication, gross negligence or willful misconduct in the case. The verdict of the jury for the dismissal of the action was therefore correct as a matter of law. Since the claimed errors specified by the plaintiff and appellant relate to matters which would not add anything material to plaintiff's proof, the specified errors, if they were such, were not prejudicial. The judgment of dismissal is therefore affirmed.

NUESSLE, C. J., MORRIS and CHRISTIANSON, JJ., and THOM, Dist. J., concur.

GRIMSON, J. did not participate.