**Roberta KUNZE, Plaintiff and Respondent,**

v.

**Larry D. STANG, Administrator of the Estate of Leon Stang, also known as Leon L. Stang, and the Estate of Leon Stang, also known as Leon L. Stang, Defendant and Appellant,**

and

**Jake W. Gruebele, Administrator of the Estate of Brenda Gruebele, Defendant and Respondent.**

**Marlin KUNZE, Plaintiff and Respondent,**

v.

**Larry D. STANG, Administrator of the Estate of Leon Stang, also known as Leon L. Stang, and the Estate of Leon Stang, also known as Leon L. Stang, Defendant and Appellant,**

and

**Jake W. Gruebele, Administrator of the Estate of Brenda Gruebele, Defendant and Respondent.**

**Civ. Nos. 8681, 8682.**

Supreme Court of North Dakota.

Sept. 2, 1971.

Rehearings Denied Oct. 26 and Nov. 22, 1971.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and appellant Larry D. Stang, Administrator of the Estate of Leon Stang, also known as Leon L. Stang, and the Estate of Leon Stang, also known as Leon L. Stang.

Greenwood, Swanson, Murtha & Moench, Dickinson, for plaintiffs and respondents Roberta Kunze and Marlin Kunze.

Maurice LaGrave, Mandan, for defendant and respondent Jake W. Gruebele, Administrator of the Estate of Brenda Gruebele.

PAULSON, Judge (on reassignment).

Marlin Kunze, the husband of Roberta Kunze, commenced an action against Larry D. Stang [hereinafter Stang], administrator of the estate of Leon Stang, and Jake W. Gruebele, administrator of the estate of Brenda Gruebele, to recover damages for personal injuries resulting from an automobile accident. Roberta Kunze, his wife, also commenced a separate action against Larry D. Stang and Jake W. Gruebele, as respective administrators, to recover damages for personal injuries sustained in the same automobile accident. Each of the above defendants filed a separate answer, denying that they were negligent or grossly negligent and further alleging that the accident and the injuries, if any, sustained by Marlin Kunze and Roberta Kunze, were due to their own negligence; that each of the Kunzes assumed the risk of injury; and that their negligence contributed to their injuries. Since these actions arose from the same accident and the same set of facts, the cases were combined for trial pursuant to the consent of the parties. After the Kunzes rested, each of the defendants moved for a dismissal of the actions and at the close of the trial each of the defendants moved for a directed verdict and for a dismissal of the actions, which motions were resisted by the Kunzes, and which motions were denied by the trial court. These cases were submitted to the jury and verdicts were returned in favor of Marlin Kunze in the sum of $37,000 and in favor of Roberta Kunze in the sum of $24,000 (which was later reduced to $22,605.52) against Larry D. Stang, as administrator of the estate of Leon Stang, and Jake W. Gruebele, as administrator of the estate of Brenda Gruebele.

Larry D. Stang, as administrator of the estate of Leon Stang, and Jake W. Gruebele, as administrator of the estate of Brenda Gruebele, then made separate motions in each case for judgment notwithstanding the verdict or in the alternative for a new trial. The motions for judgment notwithstanding the verdict or in the alternative

for a new trial were denied. Larry D. Stang, as administrator, has perfected appeals from the judgments and the orders denying the motions for dismissal, motions for a directed verdict, and for judgment notwithstanding the verdict or in the alternative for a new trial. A separate appeal was filed in each of the cases. However, since these cases were combined in the trial court, and have been appealed on the same record, they will be considered in one opinion.

Jake W. Gruebele, as administrator of the estate of Brenda Gruebele, has not appealed, even though a joint judgment was entered in each of the cases against Larry D. Stang and Jake W. Gruebele, as administrators.

The facts in this case are that Marlin Kunze and Roberta Kunze, his wife, met Leon Stang and Brenda Gruebele at a lake located near Regent, North Dakota, during the afternoon of July 4, 1967. The Kunzes, Leon Stang, and Brenda Gruebele met again that evening at a tavern located in Regent. It is conceded by all parties to this action that liquor was not a factor nor an issue in this case. These four individuals left the bar in Regent at approximately ten o'clock on the evening of July 4, 1967, for the purpose of driving to Mott to purchase some food, namely, hamburgers. Leon Stang was driving his car, a 1966 Chevrolet automobile, at the time the group left Regent. Shortly after leaving Regent, Leon Stang stopped his car and permitted Brenda Gruebele to drive it. The accident from which these lawsuits arose occurred approximately two miles past the point where the exchange of drivers took place, on North Dakota Highway No. 21, which is a hard-surfaced highway, having a traveled mat approximately 26 feet wide and adjacent ditches with gradual slopes. The highway at the point of the accident scene was level; the weather was clear and dry; and there were no other vehicles in the vicinity at the time. The car's lights were burning, even though it was not completely dark. Shortly after Brenda Grue-

bele assumed the operation of Stang's vehicle, she negotiated the gradual curve to the right in the highway. As the car entered the curve, Marlin Kunze noted that the speedometer registered 85 miles per hour and he requested Brenda to slow down as he wanted to live to eat the hamburgers— referring to the reason for the trip, namely, to purchase hamburgers. To this, Leon Stang replied that his car was capable of traveling at speeds up to 90 miles per hour. There was no evidence that the speed of the vehicle was reduced, and no further protest was made.

Approximately 800 feet past the curve, the Chevrolet gradually veered off the surfaced portion of the road and, entering the right ditch, traveled a distance of 560 feet in the ditch before striking an approach and culvert. The car's momentum was such that it crossed the approach, after which it came to rest on the other side of the approach. Brenda Gruebele and Leon Stang were instantly killed and the Kunzes were both severely injured.

Larry D. Stang, as administrator, urges that the evidence is insufficient to sustain the verdicts and, in addition, has assigned errors of law which occurred during the trial of the actions as grounds for the reversal of the judgments and the orders.

The first issue to confront us is whether the evidence is insufficient to sustain the verdicts. Stang contends that the evidence was insufficient as a matter of law to support the verdicts of the jury that Brenda Gruebele was grossly negligent. The question of gross negligence ordinarily is a question of fact for the jury and becomes a question of law for the court only where the evidence is such that reasonable minds can draw but one conclusion therefrom. Thornburg v. Perleberg, 158 N.W.2d 188 (N.D.1968); Grenz v. Werre, 129 N.W. 2d 681 (N.D.1964). We have perused the record and cannot say that reasonable minds could draw but one conclusion therefrom. The evidence was presented to the jury that the Stang vehicle operated by

Brenda Gruebele was traveling at a speed of 85 miles per hour just prior to the accident. While this court has held that excessive speed does not of itself constitute gross negligence [Holcomb v. Striebel, 133 N.W.2d 435 (N.D.1965)], it is well established that excessive speed may serve as a basis for finding gross negligence when other factors are present. 5 Blashfield Auto Law 3rd Ed. § 213.22 (1966). In this case there were other factors present. The evidence does not conclusively establish the exact time of the accident but the evidence does reveal that the accident occurred during the late evening of July 4, 1967, at a time when, if it was not dark, it was at least dusk. Since § 39–09–02 of the North Dakota Century Code provides that the maximum 65-mile-per-hour speed limit for passenger vehicles is permitted only until sunset, this court will recognize that driving at dusk is more dangerous than daylight driving and will allow the time of day to be considered as a factor, in addition to that of excessive speed, in determining whether gross negligence is involved.

Sheriff Kramer testified that the speed limit on Highway No. 21 where the accident occurred was 65 miles per hour during the daytime and 55 miles per hour at night for passenger vehicles. Since the evidence is conflicting as to the exact time of the accident, it would be proper for the jury to determine whether the 55-mile-per-hour speed limit was in effect. If the 55-mile-per-hour speed limit was in effect the car was exceeding the speed limit by at least 30 miles per hour. The authorities recognize that speed which is palpably excessive may of itself constitute gross negligence where it is probable that death or injury will result. 5 Blashfield Auto Law 3rd Ed. § 213.22 (1966, 1971 P.P.). This court will recognize that speed which is palpably excessive is a factor to consider in determining whether there was gross negligence. The jury would be justified in considering as palpably excessive a speed of 30 miles per hour over the limit, par-

ticularly where, as in this case, death and serious injuries occurred.

A number of jurisdictions have held that the failure of a driver to slow down upon protest from a guest is a factor to consider in determining whether a driver's action comes within the purview of the guest statute. The rationale is that the necessary knowledge on the part of a driver that serious injury to a guest would probably result is frequently based upon warnings and remonstrations on the part of a guest. 6 A.L.R.3d 769, 787. We adopt this reasoning and, to the extent that this view contradicts previous holdings of this court, such holdings are overruled. See Anderson v. Anderson, 69 N.D. 229, 285 N.W. 294 (1939). In the case at bar, the jury heard evidence as to Marlin Kunze's statement to Brenda Gruebele to "slow down" and this protest was another factor for the jury to consider.

Additional factors which the court considers important concern the physical circumstances in the case—the fact that just before the point where the accident occurred, the road makes a gradual curve to the right; together with the fact that the car traveled off the road and traversed a distance of 560 feet in the ditch without any attempt being made to turn to avoid striking the approach. This sequence of events reveals to the court other factors which "the jury could have found" [Gleson v. Thompson, 154 N.W.2d 780, 783 (N.D. 1967), ¶ 5 of syllabus] in addition to that of excessive speed in determining whether there was gross negligence. From these physical facts the jury "could well have believed, inferred and found" [Grenz v. Werre, 129 N.W.2d 681, 687 (N.D.1964)] that Brenda Gruebele willfully and deliberately directed her attention elsewhere than to her driving, since cars are not normally driven at an excessive rate of speed off the traveled portion of a highway and into a ditch. This court has previously held that where an operator of a motor vehicle driving at a high rate of

speed voluntarily and deliberately turns his attention other than to the highway on which he is traveling and as a result of his inattention, even though momentary, an accident occurs, the question of gross negligence is for the jury. Grenz v. Werre, *supra*; Sheets v. Pendergrast, 106 N.W. 2d 1 (N.D.1960); Rubbelke v. Jacobsen, 66 N.D. 720, 268 N.W. 675 (1936).

From the fact that the car continued straight down the ditch with no attempt being made to turn it, the jury "could well have believed, inferred and found" (Grenz v. Werre, *supra* 129 N.W.2d at 687) that it was too dark for Brenda to see the approach in time to turn to avoid it. The record indicates that the slopes of the ditches, especially the outer slope, were quite gradual and "the jury could have found" (Gleson v. Thompson, *supra* 154 N.W.2d at 783) that turning the car in either direction would have lessened or eliminated the force of the impact. The jury, considering the facts in this light, would be justified in finding that Brenda Gruebele acted with a conscious disregard for the safety of her passengers.

The court will not discuss further how the physical circumstances of the case influenced the jury. We believe that there was ample evidence to preclude this court from holding as a matter of law that gross negligence was not present in this case. Lest it be argued that the jury was allowed to base its decision on speculation and conjecture and that the court overlooked or disregarded existing law on the subject, it is well to consider such existing law, specifically the case of Grenz v. Werre, *supra* 129 N.W.2d at 683, where, in paragraph 4 of the syllabus, this court stated:

"Where *facts* and *circumstances* justify *inference* that driver of a motor vehicle was proceeding at high rate of speed *and voluntarily and deliberately directed his attention elsewhere than to the highway upon which he was driving*, and as a proximate result of his inattention, even though momentary, an acci-

dent occurs, *the question of his gross negligence is for the jury."* [Emphasis added.]

And, at page 687, the court stated:

"The jury, in considering all of the testimony and photographs received in evidence, *could well have believed, inferred and found*, that the night was dark and it was drizzling; that the road was wet; that Werre was driving from 60 to 65 miles an hour, or at a rate of speed greater than was reasonably safe under the existing road and weather conditions; *that he voluntarily directed his attention elsewhere than to the highway upon which he was driving*; that as a proximate result of his inattention he found himself in a position of peril as he reached the crest of the hill; that he stepped on his brake, causing his car to skid out of control into the north lane and crash head-on into the oncoming car; that Werre's account as to how the collision occurred was unreasonable, improbable and inconsistent with the *physical facts*, and as such was unworthy of belief and credence." [Emphasis added.]

The dissent urges that *Grenz* is not applicable in the case at bar since there was no evidence that Brenda Gruebele willfully and deliberately directed her attention elsewhere than to her driving. A perusal of the *Grenz* transcript fails to reveal any positive testimony in that case that the driver willfully and deliberately directed his attention elsewhere than to the road. Quite to the contrary, those witnesses in *Grenz* who possibly could have furnished this positive testimony couldn't remember what happened. Thus, in *Grenz* and in the case at bar the finding is made from the physical facts and circumstances of the case.

Questions as to the role of the jury and the sufficiency of evidence in gross negligence cases under the North Dakota guest statute were the subject of a recent decision of the United States Court of Appeals, Eighth Circuit, in Steel v. Downs, 438 F.2d 310, 312 (1971), in which the

Eighth Circuit Court stated, citing Paulsen v. Modern Woodmen of America, 21 N.D. 235, 243, 130 N.W. 231, 234 (1911):

> " ' "Ordinarily the question of what inferences are deducible from the evidence is peculiarly a question for the jury, and *it is only in rare instances that the court is justified in determining such question as a matter of law.* If it can be said that reasonable men may fairly differ as to the inferences to be deduced from all the circumstances disclosed, it is a proper case for the jury." ' " [Emphasis ours.]

And, in Steel v. Downs, *supra* 438 F.2d at 313, citing Jacobs v. Nelson, 67 N.D. 27, 268 N.W. 873, 877 (1936), it is stated:

> " 'This court has never construed the term "gross negligence" so as to preclude an injured person from recovery under any and all circumstances. That one degree of negligence may shade into another so as to make it difficult to state to what class the result of the acts, neglect, and misconduct of the negligent person belong merely adds to the difficulty of the plaintiff in the case in sustaining the burden of proof. The burden of proof of showing gross negligence rested upon her in this case. However, *where there is a question whether the acts are such as to place the defendant in the category of one guilty of gross negligence or the class of one guilty of ordinary negligence, the matter should be submitted to the jury, as the jury must determine to which class the defendant belonged.* It is only when but one conclusion can be drawn from undisputed facts the matter becomes a question of law, for, if reasonable men may differ as to the classification of the defendant, then the question *must* be submitted to the jury and the verdict of the jury thereon is determinative of that issue.

> " 'In determining this issue, the testimony most favorable to the plaintiff must be taken as the situation upon which we must base whether but one conclusion can be drawn.' " [Emphasis added.]

The dissent notes that it would be just as reasonable for the jury to speculate that Brenda Gruebele's operation of the vehicle was the result of a heart attack or a blackout. A review of the record reveals that Brenda Gruebele was 20 years of age, and in good health prior to the accident; and there is not one iota of evidence that she had ever suffered from heart disease or blackouts.

 It is urged by Stang that the gross negligence of Brenda Gruebele should not be imputed to the owner of the car, Leon Stang. This court has held that mere ownership of a car is not enough to impute gross negligence. Posey v. Krogh, 65 N.D. 490, 259 N.W. 757 (1935); Erickson v. Foley, 65 N.D. 737, 262 N.W. 177 (1935). In those cases, however, the owners were not present in the car at the time of the accident.

The general rule, when the owner is present, is that the owner of a motor vehicle is charged with the ordinary negligence of the driver only when he has the right to exercise control over the driver. 8 Am.Jur. 2d, Automobiles and Highway Traffic § 572. Some jurisdictions have held the owner-passenger liable under such conditions for injuries to guests even though an applicable statute required more than ordinary negligence as the basis for recovery. 50 A.L.R.2d 1281, 1289. This court has held that the test to be applied as to ordinary negligence is whether the owner had a reasonable opportunity to exercise the right to control. Jasper v. Freitag, 145 N.W.2d 879, 886 (N.D.1966). While this court has not previously ruled on the question of imputing gross negligence to an owner-passenger, we adopt the test as set forth in Jasper v. Freitag, *supra*, and hold that a jury would be justified in imputing gross negligence to an owner-passenger where he has a reasonable opportunity to exercise the right to control the actions of the driver. It would be illogical to limit Leon Stang's action to ordinary negligence if he failed to control Brenda's driving, since it is more culpable to fail to exert control

over a driver where the driver's actions are grossly negligent than where the driver's actions constitute ordinary negligence. The question then for the jury to consider was whether Leon Stang failed in his duty to control the driving of Brenda Gruebele so that her gross negligence would be imputed to him. We cannot say as a matter of law that Leon Stang met this duty. The jury may well have considered the relationship between them— they dated steadily and Leon was older— and determined that Leon had the right to exercise control but that he acquiesced and encouraged her to continue driving in the same manner. Specifically, the jury may have interpreted Leon's statement that the car was "good for 90" as encouraging Brenda to continue to drive at a high rate of speed when he had a duty to control her driving and should have admonished her to slow down instead.

It should also be noted that there was testimony to the effect that Leon Stang had his hand on the steering wheel after the car was proceeding in the ditch. In view of the fact that the car traveled a distance of 560 feet after entering the ditch, the jury may have determined that, except for Leon's possible interference, Brenda would have successfully brought the car under control and avoided impact with the approach. This court has not previously considered the question of whether an owner-passenger's grabbing of a steering wheel at a moment of instant danger is evidence of gross negligence. Other jurisdictions have held that such an action on the part of an owner-passenger is evidence of gross negligence and we adopt their reasoning as the better view. Petway v. McLeod, 47 Ga.App. 647, 171 S.E. 225 (1933); Brainerd v. Stearns, 155 Wash. 364, 284 P. 348 (1930).

■ Stang contends that the Kunzes' negligence contributed to their injuries because of their failure to use the seat belts with which the Stang car was equipped. While it is urged that the Kunzes' failure to use seat belts was con-

tributory negligence as a matter of law, such contention is without merit. A few jurisdictions have permitted juries to consider the fact that seat belts were not used, but the courts almost without exception have refused to take such an issue from the jury and hold as a matter of law that such failure is contributory negligence. 15 A.L.R.3d 1428 (1967, Supp. 1970). This court will adhere to the reasoning as set forth in the Annotation contained in 15 A.L.R.3d 1428, and does not believe that failure to use seat belts should be considered as contributory negligence as a matter of law.

■ Stang urges as a matter of law that the Kunzes assumed the risk of Brenda Gruebele's driving. The following language from Wheat v. Patterson, 154 N.W.2d 367, 369 (N.D.1967), citing Borstad v. La Roque, 98 N.W.2d 16, 25 (N.D.1959), is applicable, in order for a defendant to prove assumption of risk by a plaintiff:

> " 'As applied to the defense raised by the host driver in an action by his guest passenger where liability of the host arises in tort, the guest will be deemed to have "assumed the risk" of injury arising from the mishap when (1) the guest has knowledge of a situation that is dangerous beyond that normally inherent in the operation of a vehicle whether caused by the obvious incompetence of the driver or by the dangerous condition of the vehicle, or otherwise, (2) an appreciation of the danger and a voluntary choice to encounter it, and (3) an injury proximately caused by the danger presented. * * *.' "

A review of the record fails to show that Stang introduced evidence that the Kunzes had ever ridden with Brenda Gruebele before, or that the Kunzes were familiar with Brenda's manner of driving prior to the day of the accident. The record further reveals that Brenda Gruebele was operating the vehicle in which the Kunzes were passengers for approxi-

mately two minutes immediately before the accident. Accordingly it was proper for the jury, in arriving at its verdict, to consider that such a short period of time was insufficient for the Kunzes to appreciate the danger and make a voluntary choice. Additional credence is given to the jury verdict by reason of the fact that the Kunzes introduced evidence of protest as to the speed at which Brenda was driving.

■ Stang's next contention is that the testimony of the Kunzes as to the conversations and dealings with Leon Stang and Brenda Gruebele should have been excluded because of § 31–01–03, N.D. C.C., the so-called dead man's statute. The pertinent provisions of that statute read:

"31–01–03. Competency of party or officers of corporate party as to transactions or conversations with decedent— Exceptions.—In any civil action or proceeding by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered or ordered entered for or against them, neither party, except as provided in section 31–01–04 and section 31–01–05, shall be allowed to testify against the other as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party. * * * "

Sections 31–01–04 and 31–01–05, N.D.C.C., referred to in § 31–01–03 are not applicable in the instant case.

Stang contends that the entire sequence of events leading up to the accident was a "transaction" within the meaning of the statute. We do not deem it necessary to determine the question of whether or not this was a "transaction" since we consider that this action does not fall within the purview of the statute. The basis for our reasoning is that this case involved two separate actions, which, by consent of the parties, were joined by the trial court, pursuant to Rule 42(a) of the North Dakota Rules of Civil Procedure, and, accordingly, we are of the opinion that when two lawsuits are joined for trial the parties in one of the lawsuits are competent to testify for the parties in the other lawsuit.

Although this issue is one of first impression for this court, we have several times held that a person, not a party to a suit, is not incompetent to testify under § 31–01–03, N.D.C.C., even though the witness is a spouse or a close relative of one of the parties. Hruby v. Romanick, 128 N.W. 2d 106 (N.D.1964); O'Connor v. Immele, 77 N.D. 346, 43 N.W.2d 649 (1950); Perry v. Erdelt, 59 N.D. 741, 231 N.W. 888 (1930); Frink v. Taylor, 59 N.D. 47, 228 N.W. 459 (1930); Hampden Implement Co. v. Dougherty, 58 N.D. 817, 227 N.W. 555 (1929); Krapp v. Krapp, 47 N.D. 308, 181 N.W. 950 (1921).

It would be anomalous not to allow Marlin Kunze to testify for Roberta Kunze in her action, and vice versa, merely because their actions were joined. While it may be difficult to determine whether Marlin is testifying on his own behalf or for his wife, the fact that he is pursuing a suit for himself should not affect his competence as a witness for his wife. The statute specifically limits its operation to parties to the action. Allowing the Kunzes to testify for each other would follow the policy of this court that the statute should not be extended beyond its letter when the effect would be to add to those who are incompetent to testify. O'Connor v. Immele, *supra* 43 N.W.2d at 653.

■ Since the testimony by the Kunzes was not identical, it is true that a portion of the testimony given at the consolidated trial would have been excluded from each of the trials if heard separately. We do not feel that the testimony which would have been excluded at separate trials would have changed the outcome of the cases. In any event, Stang agreed to a consolidation of the cases and cannot now complain about what could have happened if the cases were tried separately.

The rights of litigants in cases which are consolidated for trial are best explained in the words of the Minnesota Supreme Court in the case of Simon v. Carroll, 241 Minn. 211, 62 N.W.2d 822, 827 (1954).

"When actions involving a common question of law or fact are consolidated for the sole purpose of conducting a joint trial [citation omitted] no merger of the actions results, and each action retains its separate identity and no increase, diminution, or change in the fundamental rights or status of the respective litigants occurs by virtue of such consolidation for joint trial."

In Larson v. Meyer, 135 N.W.2d 145 (N.D.1965), this court discussed the right of the jury to consider the testimony of surviving witnesses and further indicated that the jury could choose to disbelieve such witnesses. Once the testimony is admitted, it is the function of the jury to believe or disbelieve the living witnesses. In the case at bar, the jury apparently determined this question in the Kunzes' favor, as it brought in a verdict in their favor.

■■■■■ Stang seeks to assign as error the additional verbal instructions given to the jury to the effect that if the owner of a vehicle remained in the vehicle as a passenger and the driver thereof operated the same with his permission or consent, such driver then became the agent of the owner, thus making the owner liable for the tortious or wrongful act of the agent. Stang claims this is error since there was no evidence offered to prove agency and also claims that this was an incorrect statement of the law of agency.

This court has repeatedly held, when a jury instruction is excepted to as erroneous, that the instruction excepted to must be considered in connection with the remainder of the charge and when the charge as a whole correctly advises the jury, the error, if any, is thereby cured. Leake v. Hagert, 175 N.W.2d 675 (N.D.1970); Willert v. Nielsen, 146 N.W.2d 26 (N.D.

1966); Hook v. Crary, 142 N.W.2d 140 (N.D.1966); Grenz v. Werre, *supra.*

The language that Stang complains of concerning agency was only a part of the additional oral instruction. The trial judge also charged the jury that the owner must have "a reasonable opportunity to exercise control over the manner in which his car was being driven" in order for the driver's gross negligence to be imputed to him. We are of the opinion that the entire charge to the jury, viewed as a whole, was not prejudicial to Stang. The trial judge made it clear that Leon Stang could not be liable unless he had a reasonable opportunity to control the manner in which Brenda Gruebele drove the car. This was a correct statement of the law with reference to the imputing of gross negligence to the owner-passenger, and we are of the opinion that that part of the oral instruction concerning agency did not mislead the jury.

Stang argues that it was error for the trial court to deny his motions for a directed verdict and his motions for dismissal of the complaints at the close of all of the evidence.

The applicable part of Rule 50(a), N.D.R.Civ.P., pertaining to motions for directed verdicts reads as follows:

"RULE 50

"MOTION FOR A DIRECTED VERDICT

"(a) When made—Effect. At the close of all of the evidence any party may move the court to direct a verdict in his favor upon one or more claims and against one or more parties. If the adverse party objects thereto, the court shall submit to the jury the issues of all claims as to which evidence has been received upon all issues and as to such claims the motion shall be denied. "

Since the court record shows that the Kunzes resisted the motions for a directed verdict, it was mandatory that the trial court submit the cases to the jury.

As to motions for dismissal, this court has previously held that when considering the validity of a ruling on such a motion the court must consider the evidence in the light most favorable to the party against whom the motion was made. Thompson v. Nettum, 163 N.W.2d 91 (N.D.1968). Viewing the evidence in this light, we cannot say that it was error to deny the motions to dismiss in the case at bar.

It is appropriate to point out that the Rules concerning motions for directed verdicts and motions for dismissal changed when the latest amendments to the North Dakota Rules of Civil Procedure became effective August 1, 1971. Rule 50(a) has been changed by deleting the requirement that a motion for directed verdict be denied if the opposing party resists. Rule 41(b) has been amended to limit to court cases a motion to dismiss for failure to show a right to relief. Rule 50(a) motions should be made only when trial is by a jury, and a Rule 41(b) motion to dismiss for failure to show a right to relief should be made only when there is a court trial. Neither of the motions will automatically be denied merely because an opposing party resists.

■ Stang asserts as error the failure of the trial court to grant his motions for judgment notwithstanding the verdict. On such motions, the evidence must be considered in the light most favorable to the party in whose favor the verdict was rendered. Brinkman v. Mutual of Omaha Insurance Company, 187 N.W.2d 657 (N.D. 1971); Haugen v. City of Grand Forks, 187 N.W.2d 68 (N.D.1971); Christensen v. Farmers State Bank of Richardton, 157 N.W.2d 352 (N.D.1968); Johnson v. Frelich, 153 N.W.2d 775 (N.D.1967); Linington v. McLean County, 146 N.W.2d 45 (N.D.1966); Mikkelson v. Risovi, 141 N.W. 2d 150 (N.D.1966); Larson v. Meyer, 135 N.W.2d 145 (N.D.1965); Chicago, M. St. P. & P. R. Co. v. Johnston's Fuel Liners, Inc., 122 N.W.2d 140 (N.D.1963). Viewed in this light, we conclude that the evidence was sufficient to present the question of fact for the jury and that Stang was not entitled to judgment as a matter of law as is required to sustain a motion for judgment notwithstanding the verdict.

■ The final issue claimed as error is the failure of the trial court to grant a new trial in each case. Such a motion is addressed to the sound discretion of the trial court and this court will interfere only when a manifest abuse is shown. Brinkman v. Mutual of Omaha Insurance Company, *supra*; Linington v. McLean County, *supra;* Christensen v. Farmers State Bank of Richardton, *supra*.

Having reviewed the evidence, we agree with the trial court and find no abuse of discretion in the trial court's refusal to grant new trials.

For the reasons stated in the opinion, the judgments are affirmed and the decisions of the trial court are affirmed.

ERICKSTAD and KNUDSON, JJ., concur.

TEIGEN, Judge (dissenting).

I dissent.

A guest does not control the automobile in which he is riding, hence the failure of the host driver to comply with a request of the guest that the host slacken the speed does not show willfulness or wantonness on the part of the driver, nor is it any proof, in itself, of negligence. A protest of a guest may be dictated by a nervous condition of the guest, a human frailty of desire to interfere, or even from an unconscious assumption of authority. This court so said in Anderson v. Anderson, 69 N.D. 229, 285 N.W. 294 (1939), in which the decision rendered established a principle of law that has continued to be the law of this state until this date. Paragraph number 1 of the syllabus in that case states:

"Failure of a driver of an automobile to slacken speed because of protest by a guest is no evidence of negligence or wantonness on the part of the driver, and in an action brought by the guest, based solely on the alleged gross negli-

gence of the driver, the driver was entitled to an instruction to this effect."

Subsequent to the decision in *Anderson* the Legislature has refused, on several occasions, to adopt bills which would repeal or modify North Dakota's guest law. The last attempt was made in the 1971 session of the Legislature by the introduction of Senate Bill No. 2225. This Bill passed the Senate but was indefinitely postponed by the House. The annotation contained in the North Dakota Century Code, a set of which is in the possession of each member of our Legislature, carries the annotation of Anderson v. Anderson, *supra,* as follows:

"Failure of a driver to slacken speed because of a protest by a guest is no evidence of negligence or wantonness on the part of the driver."

Certainly we cannot assume, under the circumstances, that our legislators were not aware of the *Anderson* holding on this point. This holding has been the law of this state for over thirty years, during which time it has been considered by our Legislature at several sessions. As late as this very year it was again considered and the policy adopted with respect to liability for injury or death of a guest was reaffirmed by the Legislature, and now, only six months later, is reversed by the majority of this court. I cannot agree that this is a proper course of action for this court to take. Without reversing the principle of law so clearly set forth in *Anderson*, the judgments entered in these two actions cannot be affirmed.

It is true that the rule is well-established that questions of negligence and proximate cause are questions of fact for the jury in a personal injury action unless the evidence is such that reasonable men can draw but one conclusion therefrom, in which event such questions become questions of law for the court. In respect to this statement I agree with the citations contained in the majority opinion. In addition, I cite in support thereof Willard v. Owens, 164 N.W.2d 910 (N.D.1969); Koland v. Johnson, 163 N.W.2d 330 (N.D. 1968); Glatt v. Feist, 156 N.W.2d 819 (N.D.1968); Gleson v. Thompson, 154 N.W.2d 780 (N.D.1967).

It is only when the evidence is without material conflict and is such that reasonable men must draw the same conclusion therefrom that the question becomes one of law for the court. Moe v. Kettwig, 68 N.W.2d 853 (N.D.1955).

In these cases the record establishes that there is no conflict in the evidence. The only eyewitnesses to the accident were the occupants of the automobile. Two of them are dead. The other two are the plaintiffs in these two cases. These plaintiffs, Mr. and Mrs. Kunze, were permitted to testify as to events and conversations, over defense objections claimed as error on these appeals. The majority have held that this evidence is admissible, on the thin thread that the parties commenced separate actions against the defendants which were consolidated for the purposes of trial and tried as one action. Thus each party testified but once during the trial and the testimony of each was on his own behalf as a party as well as a corroborating witness for the other. The actions involved the common question of law and fact. The issue on the question of liability was identical in each case. Both parties, in their respective action, relied on the same transaction and statements to sustain the burden of proof which each had to recover in the tort action. Both parties relied upon the same claimed tort to seek recovery for their respective injuries. Each of the parties, through their respective action, testified as to the transaction and the statements made by the deceased. In my opinion, Section 31-01-03, N.D.C.C., was violated in these cases as each party was permitted to testify in his own action against the defendants, who were the legal representatives of the deceased, the alleged tort feasors. It is my opinion that to have allowed this testimony flies directly in the face of the statute. I feel confident that the jury did not understand the fine distinction pointed out by the majority in their opinion that "the parties in one of the lawsuits are competent to testify for the parties in the other lawsuit" and, in

fact, were so doing when they testified as to the transaction and statements. Further, the intent and the clear wording of the statutes, in my opinion, have been abrogated in situations where two people are injured as a result of a single transaction and bring separate lawsuits against legal representatives of the alleged tort feasors.

As I stated previously, there is no conflict in the evidence and, considering all of the evidence, including testimony by each of the parties to the transaction and statements, it is still not sufficient, as a matter of law, to sustain the verdicts. The whole record establishes that the accident occurred on a clear day. The highway was dry and in good driving condition. The automobile was in good mechanical condition. Brenda Gruebele, although operating the automobile at a high speed, drove it on the proper side of the highway and in a regular manner. There is no explanation in the record of the reason why the automobile left the highway. Pictures introduced in evidence of the tracks made by the automobile, taken at the direction of the sheriff who investigated the accident and one taken by a newspaper reporter, disclose that the testimony given by Mr. and Mrs. Kunze with respect to the highway and the leaving of the highway by the automobile was truthful. It appears that the highway is flat and straight where the tragedy occurred. There were no obstructions. The movement of the automobile from the highway onto the shoulder and then into the ditch was gradual. The automobile proceeded for some distance with the right wheels on the shoulder of the highway, then gradually went into the ditch. Marlin Kunze testified that the only movement which he felt that was not normal to that of a moving automobile upon a hard-surfaced highway was a "lunge" or "lurch" which occurred as the automobile left the highway and went into the ditch. Both of the plaintiffs testified that they did not know what caused the automobile to leave the highway. There was no claim of intentional or wanton misconduct made by the witnesses. In their arguments the Kunzes acknowledge that this court has held that failure to keep a proper lookout or excessive speed do not, of themselves, constitute gross negligence. They argue that this position must be qualified as has been done in some other jurisdictions. They have cited in support of their arguments the annotation contained in 6 A.L.R. 3d 769, with emphasis on Section 4 [c] at 787. They have succeeded in convincing the majority of the soundness of their argument. The majority state:

"We adopt this reasoning and, to the extent that this view contradicts previous holdings of this court, such holdings are overruled. See Anderson v. Anderson, 69 N.D. 229, 285 N.W. 294 (1939)."

In view of the historical background in this state, set forth earlier in this dissent, I feel that the majority have gone too far, too fast.

The cases cited in support of the A.L.R. annotation, in which warnings or remonstrations of a guest as to the excessiveness of the speed were stressed by the court as a factor, were attendant upon other circumstances indicating an intention to injure or a wanton disregard for the safety of the guest, or actual or constructive notice that serious injury to the guest would probably result because of the excessiveness of speed. Such circumstances involve speeding while intoxicated, speeding without paying attention or with the eyes off the road, failing to stop or slow down at crossings or intersections, speeding on a curve, hill or grade, speeding along slippery, rough or bumpy roads, speeding with a defective automobile, or speeding when vision is obscured by fog, rain, dust, snow or blinding lights. In all those cases speed and the warnings were accompanied by some dangerous circumstance, indicating an intention to injure or a wanton disregard for the safety of the guest, or actual or constructive notice that serious injury to the guest would probably result because of the excessiveness of the speed with which the automobile was being driven. The facts in the cases on which this portion of the A.L.R. annotation rely do not comport

with the circumstances in the cases before us, nor are they authority, in my opinion, for overruling Anderson v. Anderson, *supra*.

The plaintiffs have alleged that their injuries were sustained as a result of the gross negligence of Brenda Gruebele. They have the burden of establishing, by a fair preponderance of the evidence, that their injuries were proximately caused as alleged. Holcomb v. Striebel, 133 N.W.2d 435 (N.D. 1965). Gross negligence, within the automobile guest statute, is no care at all or omission of the care which even the most inattentive and thoughtless seldom fail to make their own concern, evincing a reckless temperament and lack of care which is practically willful in its nature. The term "gross," as applied to the negligence of a motorist in an action brought by an automobile guest, has reference to the mental attitude of the motorist in regard to the consequences which he should have foreseen, and implies such gross recklessness as shows indifference to the consequences. Holcomb v. Striebel, *supra*; Jacobs v. Nelson, 67 N.D. 27, 268 N.W. 873 (1936).

The trial court instructed the jury on the question as follows:

"I charge you that gross negligence within our automobile guest statute is no care at all, or the omission of care which even the most inattentive or thoughtless seldom fail to make for their own concern, evincing a reckless temperament and lack of all care, which is practically wilful in its nature and shows an indifference to the consequences of a negligent act.

"Gross negligence is a relative term and whether or not the certain act or omission to act constitutes gross negligence depends upon all of the facts and circumstances of each case.

"The court instructs you, however, that the mere failure of a driver to keep a proper lookout, or excessive speed, do not of themselves constitute gross negligence. To constitute gross negligence, the plaintiffs must prove that Brenda Gruebele drove the car in question in a manner evincing a reckless temperament and an indifference to the probable consequences of her negligent act."

The instructions given are not alleged to be erroneous and conform to what this court has repeatedly said in guest cases on the issue of gross negligence. Holcomb v. Striebel, supra; Norgart v. Hoselton, 77 N.D. 1, 39 N.W.2d 427 (1949); Anderson v. Anderson, *supra*; Schwager v. Anderson, 63 N.D. 579, 249 N.W. 305 (1933).

Inadvertence is not gross negligence. Norgart v. Hoselton, *supra*.

The instructions given to the jury and the law as established in this state are that the evidence, in addition to proving negligence, must also prove that Brenda Gruebele drove the automobile "in a manner evincing a reckless temperament and an indifference to the probable consequences of her negligent act" and "which is practically wilful in its nature."

Additional evidence in the record consists of testimony by the sheriff that the speed limit on the highway where this tragedy occurred is sixty-five miles per hour. Thus evidence that the car was traveling at eighty-five miles per hour is evidence of negligence and, on the basis of the proof of speed, the jury could find that Brenda Gruebele was negligent and that her negligence was the proximate cause of the tragedy which occurred. However, these findings will not support the verdicts in these cases as liability may not be predicated upon ordinary negligence. There is no evidence to support a finding that the negligence was superinduced by the intoxicated condition of Brenda Gruebele and thus bring these cases within the law as established in Borstad v. La·Roque, 98 N.W.2d 16 (N.D.1959); nor is there any evidence that Brenda Gruebele voluntarily or deliberately directed her attention elsewhere than to the highway upon which she was driving to bring her within Grenz v. Werre, 129 N.W.2d 681 (N.D.1964), or Sheets v. Pendergrast, 106 N.W.2d 1 (N.D. 1960), or Rubbelke v. Jacobsen, 66 N.D. 720, 268 N.W. 675 (1936); nor is there evidence to support our decision in Bolton v. Wells, 58 N.D. 286, 225 N.W. 791

(1929), in which case the driver of the automobile was exceeding the speed limit while driving over icy roads and, while so engaged, took his gaze from the road and at the time of this momentary withdrawal of attention the car swerved, skidded and upset causing injury to his guest.

I have examined the evidence carefully and, while it shows that the automobile was being driven at a high rate of speed and went into the ditch where it continued until it struck a crossroad, it is not shown how the accident took place or what caused it. Neither is there any showing made which would indicate the mental attitude of Brenda Gruebele while she was driving the automobile. In fact, the testimony of Mr. and Mrs. Kunze, who were the guests and the only surviving eyewitnesses, was to the effect that Brenda Gruebele was driving properly in all respects, except as to speed. The plaintiffs were sitting in the back seat. They testified that they observed the speedometer before the automobile entered a gradual curve some two-tenths of a mile long, and just before or at the time the automobile entered the curve the plaintiff, Marlin Kunze, testified that he said, "Brenda, slow down, I want to eat the hamburger tonight, I don't want to die." Roberta Kunze testified that she heard this statement made by her husband and that Leon Stang answered: "Oh, hell, this car is good for ninety." The plaintiff, Marlin Kunze, however, does not remember this statement being made by Leon Stang and, therefore, if he was called as a witness in his wife's separate action against these defendants he could not have testified to the answer which his wife testified was made by Leon Stang to his statement. Thus, in view of the ruling of the majority, the plaintiff, Mrs. Stang, testified as a party in her action to a statement made by the deceased which could not have been admitted in her case if it were tried separately. It appears from the testimony that the automobile continued through the curve at approximately the same speed. It negotiated the curve successfully on its own side of the highway and proceeded for some 700 to 800 feet on the straightaway, all on its proper side of the highway. Then it went gradually into the right-hand ditch. It proceeded in the ditch until it struck the crossroad, which it passed over, and came to rest on the opposite side. The distance from the point where the automobile left the highway to where it hit the crossroad, according to the testimony of the sheriff, was 560 feet. There is no conflict in the evidence but, on the basis of this evidence, the majority have opined that the evidence "could suggest that Brenda Gruebele willfully and deliberately directed her attention elsewhere."

The majority allude to two physical circumstances: first, that before the automobile left the highway the highway makes a gradual curve and, second, the fact that the car traveled unexplainably off the road and traveled a distance of 560 feet in the ditch without any "apparent" attempt being made to avoid striking the crossroad. They conclude that this sequence of events reveals to them other factors which "could suggest" that Brenda Gruebele willfully and deliberately directed her attention elsewhere than to her driving and, secondly, that "it could have indicated to the jury" it was too dark for her to see the approach in time to turn to avoid it. This is introducing speculation into the case and suggesting that the jury may have speculated and that, if it did, it has received the majority's blessing. Certainly there is no evidence to sustain these conclusions. Further, there is no claim made on the part of these plaintiffs that Brenda Gruebele, as driver of the car, willfully and deliberately directed her attention elsewhere, or that it was too dark to see the crossroad. The testimony is to the effect that the exact time of the occurrence of the accident is not known and that it was "approaching dusk." Neither party remembers whether the lights were on but both parties remember discussing the cleanliness and orderliness of a farmstead which they passed at the curve. Mrs. Kunze also remembers seeing a sign along the highway which read "Trash Can" and Mr. Kunze testified that

he remembered seeing a "lot of grass flying around" as the car was traveling in the ditch. There is no claim that it was dark, nor is there any evidence in this record from which the jury could conclude that it was too dark to see the crossroad, or that Brenda Gruebele willfully and deliberately directed her attention elsewhere than to her driving. It would be just as reasonable to speculate that she had a heart attack, or that she blacked out. Neither juries nor this court are permitted to speculate as to facts from which to draw conclusions.

Considering the evidence in the light most favorable to the verdicts, I find nothing more than a case of ordinary negligence on the part of the driver of the automobile. The facts disclose a typical case of negligence, with failure to exercise the care of a reasonably prudent person, for which there can be no recovery in an action by a guest against his host. There is, in my opinion, no justification for the verdicts of the jury on the basis of the record made in this case.

> "When negligence is shown and the issue centers on whether the degree is what is known as ordinary negligence or gross negligence, the burden of proof is upon the one who asserts gross negligence to show that the acts complained of are of that degree." Jacobs v. Nelson, *supra.*

Presumptions, guesses or assumptions will not suffice; neither will the doctrine of res ipsa loquitur aid the plaintiffs.

> "Unlike the case in which it is only necessary to establish ordinary negligence, all cases seem to agree that the doctrine of res ipsa loquitur is not available where it is necessary, as in the case of an action under a guest statute, to show that the defendant was guilty of gross negligence, or wilful and wanton misconduct. For example, it has been held that the doctrine of res ipsa loquitur is not available to establish gross negligence or wilful or wanton misconduct, as required under a guest statute, where the motor vehicle leaves the roadway or turns over and thereby causes injury or death to a guest." 8 Am.Jur.2d, Automobiles and Highway Traffic, Sec. 920.

I find, upon the record made in these two cases, that reasonable men, acting fairly and impartially, could arrive at but one conclusion, that is, that the injuries sustained by the plaintiffs, Mr. and Mrs. Kunze, were not caused by gross negligence on the part of Brenda Gruebele and that, therefore, as a matter of law, the defendant-appellant in these cases was entitled to a judgment for dismissal of the actions notwithstanding the verdicts.

Addendum to Dissent

Following the release of the original majority opinion and my dissent a petition for rehearing has been filed. The majority have now denied the petition for rehearing and have substituted several pages of their original opinion, in which pages they have substituted several phrases alluded to in my dissent, with other words, however, without change in meaning. They have also quoted at some length from Grenz v. Werre, *supra,* and have attempted to justify their decision in this case on the insufficiency of the evidence in that case. They state that they have reread the transcript of the evidence in *Grenz* and have concluded that the finding that the driver willfully and deliberately directed his attention elsewhere than to the road must have been inferred from the physical facts and the circumstances. The difference in the two cases lies in the fact that the driver of the car in *Grenz* testified, at the trial, that he did not see the car with which he collided until just seconds before the collision occurred and that he did not know where or how the collision occurred. There is no comparable evidence in this case upon which to base the inference.

STRUTZ, C. J., concurs.

STRUTZ, Chief Justice (dissenting).

I concur in the above dissent. The majority have, by their opinion, repealed the guest statute, which the legislative assembly has repeatedly refused to do.

The Judgment should be reversed.